### IN THE

# SUPREME COURT

#### OF

# OREGON.

Argued at Pendleton May 4, affirmed June 21, 1921.

## HARNEY VALLEY IRRIGATION DISTRICT *v.* WEITTENHILLER.

(198 Pac. 1093.)

**Parties—Want of Capacity to Sue Waived by Failure to Demur.**

1. In proceeding by irrigation district to test the validity of its organization under Laws of 1919, page 693, the objection that the petition was authorized by only two directors, the bond of neither of whom had been approved by the county judge, was waived by failure to raise objection by demurrer under Section 68, subdivision 2, Or. Laws, and Sections 71 and 72; the objection being to the legal capacity to sue, the want of which appeared on the face of the petition.

**Evidence—Judicial Notice Taken of Organization and Boundaries of Irrigation District.**

2. The court will take judicial notice of the organization and boundaries of an irrigation district organized under Laws of 1917, page 743, and acts amendatory thereto.

**Waters and Watercourses—Irrigation District a Complete and Independent Corporate Entity.**

3. An irrigation district, organized under Laws of 1917, page 743, and acts amendatory thereto, constitutes a complete and independent corporate entity.

**Waters and Watercourses—Organization of Irrigation District not "County Business," Within Constitutional Provision Providing for Commissioners to Sit With County Judge in Transaction of County Business.**

4. In proceeding to organize irrigation district under Laws of 1917, page 743, and acts amendatory thereto, the county judge had jurisdiction without the attendance of the county commissioners, notwithstanding Const., Art. VII, Section 12, providing for election of commissioners to sit with county judge while transacting "county

101 Or.—1                                 (1)

business"; the organization of an irrigation district not being "county business," within the Constitution.

**Waters and Watercourses—Agreement Between Promoters of District Being Organized and Corporations Owning Extensive Lands Within Proposed District Held not to Affect Validity of Organization.**

5. Agreement between promoters of irrigation district being organized under Laws of 1917, page 743, and acts amendatory thereto, and two corporations owning extensive lands within the proposed district, that corporations were to have the right to name two of the directors did not affect validity of the organization of the district, where election was ordered by county judge on petition and notice in proper form, signed by proper petitioners, after a hearing without the agreement having been brought to court's attention, and where there was no charge of fraud or corruption in procuring order or in conducting the election, and where it did not appear that the men named as directors were incompetent or disqualified, or had knowledge of the agreement; the judgment being conclusive, under Sections 756, 7308, Or. Laws.

From Harney: DALTON BIGGS, Judge.

In Banc.

This is a proceeding commenced to determine the legality of the proceedings in connection with the organization of the Harney Valley Irrigation District. It is admitted that immediately prior to December 4, 1919, the requisite number of legal petitioners addressed to the County Court of Harney County a petition praying that a hearing be had and an order made determining whether a sufficient number of owners of land in the proposed district had petitioned for the formation thereof and whether the petition and the notice of time of presentation thereof were duly published as provided by law, designating the name of said district, establishing and defining the boundaries thereof, calling an election for the purposes set forth in the petition, fixing the time and place therefor, and establishing a convenient number of election precincts in said proposed district; that notice of the presentation was given, and that the petition and notice were regularly published in news-

papers of the county, all in conformity to the statute. It is admitted likewise that all of the land described in the petition to be included in the district is in Harney County, Oregon; that on January 5, 6 and 7, 1920, at a hearing on the petition sundry applications were considered for inclusion in the district and others for exclusion therefrom. The petition goes on to trace the action of the County Court culminating in an order for an election. It is admitted that the county clerk gave notice of the election in the statutory manner; that the ballot was in the form directed by the stat-- ute; that due notice of the election was given; that three certain candidates were nominated for directors; that the election was held; that two of the elected directors filed with the county clerk of Harney County their official bonds; that "at the hour of 1:30 p. m. on the twenty-sixth day of February, 1920, the said board of directors organized by electing A. R. Olsen temporary chairman and electing Robert M. Duncan temporary secretary"; and that among other business the board of directors provided by resolution that a proceeding be brought by petition in the name of Harney Valley Irrigation District in the Circuit Court of the State of Oregon for the county of Harney, under the provisions of Chapter 390, Laws of 1919, to examine judicially into "the sufficiency, regularity and legality of proceedings in connection with the organization of Harney Valley Irrigation District, and that the temporary secretary be authorized to verify the petition in such proceeding." The prayer is to the effect that the court judicially examine into the regularity, legality and sufficiency of the proceedings in connection with the organization of the district.

Afterwards, on April 10, 1920, P. S. Weittenhiller demurred to the petition but later withdrew his

objection and by consent filed an answer, showing his qualification as a land owner within the proposed district, and admitting substantially what has been noted above, contending that the proceedings were had before the county judge without assistance of or consultation with the county commissioners, and on account of that were void.

As new matter answering the petition, the following was alleged by the defendant Weittenhiller:

"That during the month of November, 1919, certain persons interested in the organization of said proposed Harney Valley Irrigation District, to wit: William Hanley, Arthur R. Olsen, Robert M. Duncan, C. A. Sweek, Charles Faulkner, Sam Mothershead and M. B. Hayes, prepared a petition asking for an order of the County Court of Harney County, Oregon, ordering an election to be held, at which election such persons as were qualified should vote to determine whether or not the said Harney Valley Irrigation District should be organized, and circulated said petition among the said qualified electors during the month of November, 1919; and as an inducement to secure the necessary number of signers for said petition entered into an agreement with the Pacific Livestock Company, a corporation, and the William Hanley Company, a corporation, wherein it was stipulated and agreed by and between said parties to said agreement that if the said Pacific Livestock Company and the said William Hanley Company should sign the said petition and would vote for said Harney Valley Irrigation District, and would use their influence in order to carry said election and would not oppose the organization of said district, the said Pacific Livestock Company might name one director for said proposed irrigation district and the said William Hanley Company might name one director for said proposed irrigation district, for the period of five years from and after the organization of said irrigation district or during the period of construction of the irrigation

works thereafter to be undertaken and completed for the said district.

"The said agreement was reduced to writing and was circulated along with the petition for the organization and formation of said district among the qualified voters for said district, and that numerous of said qualified voters signed said agreement; that said protestant does not have possession of said agreement nor a copy thereof, and does not know the exact names of the persons who signed said agreement, but is informed and believes, and upon information and belief alleges the fact to be that the said Pacific Livestock Company and the said William Hanley Company, corporations, and the said Arthur R. Olsen, Robert M. Duncan, C. A. Sweek, Sam Mothershead and M. B. Hayes, and other persons whose names are not known to this protestant, but who constituted a majority of said petitioners, did sign said agreement."

Contending that the nomination and election of Olsen and Hanley, members of the two corporations mentioned, were carried out under the terms of the agreement stated; that the two corporations would not have signed the petition for organization of the district, and that the proper number of land owners could not have been obtained except for the agreement, the answer concludes with a prayer to the effect that the organization of the district be declared null and void. The Circuit Court sustained a demurrer to the new matter in the answer, and dismissed the affirmative defense.

The court heard the case on the pleadings thus formed, made findings of fact and conclusions of law favorable to the petitioner and entered a decree to the effect that the Harney Valley Irrigation District and all of the proceedings in connection with the organization thereof, and the organization of the board of directors, were regular and legal, and that the

said district was legally organized under the provisions of Chapter 357, Laws of 1917, and acts amendatory thereto. Both parties appealed, the district contending that the Circuit Court decree is vague and indefinite in that "it does not set forth the boundary lines of the district as organized and does not name the directors of the said district." No assignments of error are included in the record in favor of Weittenhiller.                                         AFFIRMED.

For appellant there was a brief over the name of *Messrs. McCulloch & Duncan,* with an oral argument by *Mr. R. M. Duncan.*

For respondent there was a brief over the names of *Mr. C. B. McConnell* and *Messrs. Hawley & Hawley,* with oral arguments by *Mr. McConnell* and *Mr. Edwin Snow.*

BURNETT, C. J.—1. It is first contended by Weittenhiller, whom we will denominate "the defendant," that the petition does not state facts sufficient to constitute a cause of suit, so to speak, in that it was authorized by only two directors, the bond of neither of whom had been approved by the county judge. This relates not to the sufficiency of the facts to constitute a cause of suit, but merely to the legal capacity of the moving party to institute the proceeding. The position of the defendant is, not that the facts stated are insufficient to allow the court to institute an inquiry into the validity of the organization, but that it does not lie in the mouth of the moving party to state these facts. In other words, properly framed, the objection is that the plaintiff has not legal capacity to sue, within the meaning of subdivision 2 of Section 68, Or. L., prescribing grounds of demurrer. It is said in Section 71, Or. L.:

"When any of the matters enumerated in Section 68 do not appear upon the face of the complaint, the objection may be taken by answer."

These "matters" are statutory grounds of demurrer, among which is want of legal capacity to sue. The following Section, 72, declares that

"If no objection be taken either by demurrer or answer, the defendant shall be deemed to have waived the same, excepting only the objection to the jurisdiction of the court, and the objection that the complaint does not state facts sufficient to constitute a cause of action."

The defect complained of, if it be one, appeared on the face of the petition in the instant proceeding. It was the duty, therefore, of the defendant, under Section 68, *supra*, to demur to the petition on the ground that "the plaintiff has not legal capacity to sue" Having withdrawn his demurrer, he waived that pleading. Inasmuch as it appeared on the face of the petition, the objection could be taken only by demurrer, so that the situation is controlled on this point by Section 72, which spells waiver of the objection.

The principal contention on behalf of the defendant is, that, conducted as the proceedings were, before the County Court presided over by the county judge alone, the county commissioners not being in attendance, that tribunal had no jurisdiction to perform the acts ascribed to it by the petition. In the judicial article of the state Constitution, Article VII, Section 12, it is said:

"The County Court shall have the jurisdiction pertaining to probate courts, and boards of county commissioners, and such other powers and duties, and such civil jurisdiction not exceeding the amount of value of five hundred dollars, and such criminal jurisdiction not extending to death or imprisonment in the

penitentiary, as may be prescribed by law. But the legislative assembly may provide for the election of two commissioners to sit with the county judge whilst transacting county business in any or all of the counties, or may provide a separate board for transacting such business.''

The defendant maintains that the organization of a drainage or irrigation district is ''county business''; that it is essentially requisite in the transaction of such business that the county commissioners sit with the county judge, in the absence of which condition, the action of the court when presided over only by the county judge is void for want of jurisdiction. The matter is to be determined by the significance to be attached to the term ''county business,'' for that is the only business the commissioners have authority to transact. The subject was treated by this court in *State* v. *McElrath,* 49 Or. 294 (89 Pac. 803). In that case the question was whether the orders of the County Court in directing an election to be held under the local option law, so called, should be made by the County Court presided over by the county judge alone, or whether they must be made by the county judge and commissioners sitting as a court for the transaction of county business. After premising that it was the first time the question had been presented for decision, although it had been assumed in previous cases that orders made by the County Court in such cases sitting for the transaction of such business were valid, this court, speaking by Mr. Chief Justice BEAN, recited the statute, now codified under Section 937, Or. L., defining county business to be transacted by county commissioners, as providing for the erection and repair of courthouses and public buildings, establishing, vacating and altering county roads, and other

matters relating to the fiscal concerns of the county; and went on to say:

"It will thus be seen that, while the business has been subdivided and classified, there is but one court provided by the Constitution and laws. In the transaction of all matters properly coming before it, except county business or such as is specially imposed on the court sitting for the transaction of county business, the county judge sits alone. When county business is being considered, the two commissioners sit with him and are a part of the court, but the judge and commissioners do not constitute a separate tribunal. They are still the County Court charged by the statute with the performance of certain specified duties. * *

"In ordering an election under the local option law, and in declaring the result of such an election, the County Court is not exercising any of its ordinary duties. It is not transacting probate business, because that contemplates matters dealing with the settlement of the estates of deceased persons. It is not exercising criminal or civil jurisdiction, because that assumes adverse parties and the determination of issues between them. It is not transacting county business, because the duties imposed upon it do not come within the provision of the statute defining what shall constitute county business. The county, as such, has no interest in the question whether an election under the local option law shall be held, nor is it affected in any way by the result. In the performance of the duty imposed upon it by the local option law the County Court is acting in a special capacity and in the discharge of 'other powers and duties prescribed by law.' "

The conclusion was, that the order of the County Court was valid, although it was made while the court was presided over by the county judge alone. In *State* v. *Maddock,* 58 Or. 542 (115 Pac. 426), it was held that "county business" relates to the fiscal concerns of the county and the management of its affairs

as a public corporation. In *Russell* v. *Crook County Court,* 75 Or. 168 (145 Pac. 653, 146 Pac. 806), the same term was said to include all business pertaining to the county as a corporate entity.

2, 3. When an irrigation district is organized, it is authorized through its board of directors to acquire property for the purposes of its organization, to sue and be sued, to enforce and maintain its rights, privileges and immunities, and the court in all acts, suits or other proceedings shall take judicial knowledge of the organization and boundaries of such district. Within its sphere, therefore, the irrigation district constitutes a complete and independent corporate entity. The details of its formation do not constitute county business. So far as the County Court is concerned, those particulars come within the category of "such other powers and duties * * as may be prescribed by law," measuring in the language of the Constitution the jurisdiction of the County Court required to be held by the county judge.

4. It is argued that the matters under consideration constitute county business for the following reasons: (1) The county clerk gives notice of the first election and the bonds of the directors must be in the form prescribed by law for the bonds of county officers and must be filed with the county clerk. (2) The county treasurer is made *ex-officio* treasurer of the district. (3) The assessment for the district is to be placed upon the county assessment-roll and the taxes are to be collected and accounted for by the sheriff in the same manner as other taxes of the county. (4) In case the district fails to levy the necessary taxes for payment of charges against the district, the County Court sitting for the transaction of county business shall make the levy. (5) Claims against the district shall be paid by warrants drawn by the county clerk.

There might be some force to these arguments, if the county in its municipal character were profited or impoverished in the least by any of the transactions mentioned. But it is not. Its concerns as a separate municipal corporation are not at all affected by any of the transactions relating to irrigation districts. It is said that the county clerk gives notice of the first election. So, also, he issues marriage licenses; but no one will contend that marriages are part of the county business. It does not affect the county in any way because the individual who happens to be county treasurer is also made *ex-officio* treasurer of the district. No one would say that the collection of taxes which the sheriff makes for all the cities, towns and school districts, constitutes county business. The county itself is not concerned in any of those things.

5. Finally, it is urged that the action of the promoters of the organization of the district, named in the answer, in agreeing with the William Hanley Company and the Pacific Livestock Company that each of those firms should name a director in the corporation, vitiates the whole proceeding. It is not stated that either of the men named as a director was incompetent or disqualified, or had any knowledge of the so-called agreement. The agreement does not appear to have been filed in the County Court or brought to its attention. The activity of the promoters thus described was political in its nature, and not contractual. It would seem that adopting the policy of ''one big district'' including the extensive lands of the two corporations and the nomination of the parties named as directors constituted in effect a political platform on which the petitioners for the district entered the campaign for the organization of the concern. The matter was agitated in public, because the answer says that a majority of the peti-

tioners signed the so-called agreement. It is not pointed out in the answer that anyone was influenced or intimidated by the agreement.

We have, then, a petition and notice admittedly in proper form, signed by proper petitioners, presented to a tribunal having jurisdiction over the subject matter. Upon a hearing wherein some petitioners sought to be included in the district and others endeavored to be excluded, the court made an order calling for an election. No charge of fraud or corruption in procuring this order or in conducting the election is laid at the door of the petitioners or of the County Court. Having jurisdiction of the persons and of the subject matter, which is the only legitimate conclusion to be drawn from the admitted allegations about the County Court, "the effect of its judgment is conclusive between the parties and their representatives and successors in interest": Section 756, Or. L.

Referring specially to the irrigation statute under which these proceedings were had, we find in Section 7038, Or. L., that the County Court shall meet on the Monday next succeeding the election, canvass the votes and, if upon such canvass it appears that at least three fifths of the votes cast are "Irrigation District—Yes," the court shall by an order entered on its minutes declare such district duly organized under the name and style theretofore designated; shall declare the candidates receiving, respectively, the highest number of votes for office as directors, to be duly elected to such offices, and shall cause a copy of the order to be filed for record in the office of the recorder of conveyances of the county in which any portion of the lands involved is situated. "And from and after the date of such filing the organization of such district shall be complete, and the officers

thereof shall be entitled to enter immediately upon the duties of their respective offices upon duly qualifying as provided by this law, and they shall hold their offices, respectively, until their successors are elected and qualified.'' This constitutes a statutory declaration of the legal effect of the filing of the order.

We have, then, in the Circuit Court a petition, the facts stated in which are sufficient to invoke the authority of the court to examine the proceedings and determine the regularity of the organization. If the two directors were incompetent to allege those facts, in other words, had not legal capacity to cause the suit to be instituted, that defect, appearing as it does upon the face of the petition, was waived by the defendant's refusing to demur to the same as well as by not urging it in the answer. The tribunal presided over by the county judge, namely, the County Court, was exercising ''such other powers and duties * * as may be prescribed by law,'' when it ordered the election, canvassed the returns and declared the result of the election to be the establishment of the district. The pre-election conduct of the promoters of the district did not affect the jurisdiction of the court. Its proceeding was based upon a sufficient petition, uninfluenced by the political action of those favoring the scheme. It has judicially considered and determined the question of the organization of the district. Its proceedings are regular; and we are not called upon to go further than to approve the organization of the district, the only question submitted for our consideration. Prescribing, as it does, the boundaries, the order of the County Court establishing the district sufficiently meets the assignment of error in the brief of the plaintiff. The precedents cited by the defendant in this part of the case

do not apply here, for they all relate to agreements among the directors or stockholders of going concerns and have no bearing on political activities prior to the formation of a *quasi*-municipal corporation such as a statutory irrigation district.    The decision of the Circuit Court is affirmed.          Affirmed.

Mr. Justice Brown took no part in the consideration of this case.

---

'Argued at Pendleton May 4, affirmed June 21, 1921.