Argued June 16, affirmed June 30, objections to cost bill sustained and decree modified July 21, rehearing denied September 27, 1925.

# IN THE MATTER OF SCAPPOOSE DRAINAGE DISTRICT.

## (Cases Nos. 11,346 and 11,152.)

### (237 Pac. 684; 237 Pac. 1117; 237 Pac. 1118; 239 Pac. 193.)

Drains—Organization of Drainage District not Invalid, Though Cost of Levee Exceeded Cost of Drainage.

1. Organization of drainage district *held* not invalid, in view of Sections 7247, 7254, 7259, 7272, Or. L., though cost of construction of a levee to protect lands from river overflow far exceeded cost of interior drainage.

Drains—Record Land Owners to Determine Whether Reclamation Would be Under Levee or Drainage Code.

2. It was for record owners of land sought to be reclaimed to determine whether they would organize and reclaim their land under Levee or Drainage Code.

Eminent Domain—Drainage District may Condemn Land for Drainage Works.

3. Under public use and welfare amendment to Constitution, Article I, Section 18, and Section 7277, Or. L., drainage district may condemn land for drainage works by following procedure prescribed by statute.

Drains—Organization of Drainage District is not "County Business," Within Constitution.

4. County Court was not sitting for transaction of "county business," when making orders relating to organization and subsequent proceedings had by officials of drainage district within Constitution, Article VII, Section 12.

Drains—Order of County Court in Drainage Proceedings Held not Invalid Because of Addition of Signature of County Commissioner.

5. Order of County Court fixing time and place for hearing petition for organization of drainage district was not invalidated because a county commissioner added his signature to that of the judge.

Drains—County Court Acquired Jurisdiction of Proceeding to Organize a Drainage District.

6. County Court acquired jurisdiction of proceeding to organize proposed drainage district and of persons of owners of land in-

---

3. Drainage of land as "public use," see notes in 14 Ann. Cas. 905; 20 Ann. Cas. 272; Ann. Cas. 1912D, 1004. See, also, 10 R. C. L. 58.

volved by filing of petition and giving of prescribed statutory notice.

**Drains—County Judge Might Cease His Duties in County Business and Hear Petition for Organization of Drainage District.**

7. Where, when matter of organization of proposed drainage district came on for hearing, County Court was in session to transact "county business," county judge had a right to cease duties therein and to hear petition for organization of drainage district.

**Drains—Generally Only Such Lands as will Derive a Benefit from Improvement Should be Included in Drainage District.**

8. Generally only such lands as will derive a benefit from improvement should be included in a drainage district, in view of Section 7247, subdivision 6, 11, and Section 7255, Or. L.

**Drains—All Lands Included Within Boundaries of Drainage District Presumed to be Beneficially Affected Thereby.**

9. Where court found, on hearing on petition for organization of drainage district, that all of land included therein would be beneficially affected thereby, and no appeal was taken from order organizing district all lands included therein would be presumed to be beneficially affected by construction and operation of drainage system; remedy of owners of land who would not be beneficially affected thereby being by Section 7255, Or. L.

## ON PETITION FOR REHEARING.

**Drains—County Court has Jurisdiction in Organization of Irrigation District.**

1. In the organization of an irrigation district, jurisdiction is vested in the County Court sitting for transaction of civil business.

**Drains—County Commissioners Sitting With County Judge on Drainage Hearing Do not Invalidate Decree.**

2. Decree assessing benefits and damages to land owners of drainage district was not void because county commissioners sat with county judge at the hearing.

**Courts—Question of Jurisdiction Presented in Every Case Involving Organization of Irrigation District Whether Raised by Parties or not.**

3. In a proceeding to confirm the organization of an irrigation district, a question of jurisdiction presents itself to a court in every case whether called to its attention by the parties to the litigation or not.

**Courts—Supreme Court Strictly an Appellate Court in Determining Proceedings in Organization of Drainage Districts.**

4. In determining regularity of proceedings in organization of drainage and irrigation districts, Supreme Court is not a court of original or concurrent jurisdiction, but is strictly an appellate court,

8. See 9 R. C. L. 645.

and as such has power to confirm proceedings on appeal from order of competent court.

See (1) 19 C. J. 638; 36 C. J. 998.   (2) 19 C. J. 734; 36 C. J. 1006 (Anno.).   (3) 15 C. J. 852; 20 C. J. 580.   (4) 15 C. J. 448 (Anno.), 456, 1109.   (5) 19 C. J. 649 (Anno.).   (6) 19 C. J. 638 (Anno.).   (7) 19 C. J. 661.   (8) 19 C. J. 618.   (9) 19 C. J. 618.

From Columbia: James A. Eakin, Judge.

Department 2.

This suit was prosecuted in the Circuit Court of the State of Oregon for Columbia County by the board of directors of Scappoose Drainage District, under the provisions of Chapter 390, General Laws of Oregon 1919 (Or. L., §§ 7358, 7359; 7360), for the purpose of obtaining a judgment of confirmation of the proceedings had in connection with the organization of the district and of the subsequent proceedings thereof.   From the decree confirming the organization of the district a number of land owners have appealed, assigning the following alleged jurisdictional defects and irregularities in the organization of the district and subsequent proceedings thereof:

1. That the project is a diking project, and that the district should have been organized under the Diking Code (Or. L., §§ 7281–7300) and not under the Drainage Code.   (Or. L., §§ 7247–7275.)

2. That the district, having been organized under the drainage laws of Oregon, has no jurisdiction to levy special assessments to defray the cost of constructing a dike, or to condemn land for the construction thereof.

3. That the County Court in creating the district was without jurisdiction.

4. That the district is without jurisdiction to divert the waters of Jackson Creek in accordance with the plan of reclamation.

5. That the district is without power or jurisdiction to include therein lands which will not be benefited by the improvement as set forth in the plan of reclamation.                    AFFIRMED.

For appellants J. G. Watts et al. there was a brief over the names of *Messrs. Collier, Collier & Bernard* and *Mr. C. L. Whealdon,* with oral arguments by *Mr. Whealdon* and *Mr. H. E. Collier.*

For Scappoose Drainage District there was a brief over the name of *Messrs. Ridgway, Johnson & Montgomery,* with an oral argument by *Mr. Albert B. Ridgway.*

BROWN, J.—The record in this case is large and the exhibits many, but the questions at issue are few.

The appellants contend that the term "drainage project," as used in connection with this undertaking, is a misnomer, because, they say, the project is essentially a diking project. They base this contention upon the physical character of the lands within the district, which require for their reclamation the construction of a dike, or system of dikes, to protect the lands from the annual freshet overflow of the Columbia River and the Willamette Slough during the summer and winter months respectively. The land embraced within the district, comprising about 5,700 acres, lies along the west bank of Willamette Slough, in Columbia County, and immediately north of the Multnomah County line.

We have examined the record with care. It is admitted by all that the greatest problem in the reclamation of this body of land is that of keeping the annual freshets from overflowing the land.

The appellants invoke a number of the averments of the petition for the organization of the district in

support of the contention that this is not a drainage project. The petition describes the land as follows:

"The said lands in general are bottom lands lying between the Willamette Slough and the mainland, which are of little value, due to their annual overflow or liability thereto, and from excess water entering from mainland drainage to the West and which lands would be very greatly benefited with much increase in value by virtue of the construction of the proposed work. The land in the proposed district is fairly smooth, but lower in the center than along the Willamette Slough, and contains a number of so-called lakes at low water, which will require drainage with suitable outlet gates through the dike, to discharge excess water, when there is no flood in the Willamette Slough, or necessary pumping equipment, when the water outside the dike is higher than the water inside the dike."

In order to sustain their position, appellants quote these additional paragraphs of the petition:

"The said district is to be organized for the construction, operation and maintenance of a drainage system for the reclamation of the said lands and the protection thereof from overflow of the Willamette Slough caused by either high water in the Willamette River or backwater from the Columbia River when in flood, and to divert the waters of Jackson Creek and Scappoose Creek," etc.

"The proposed plan of reclamation and protection is to provide where necessary, proper and suitable dikes or embankments to protect the above-described lands from overflow from the Willamette Slough at periods of high water, and to divert the streams which flow into said Willamette Slough from the West, around the proposed district, and to drain the land by ditches or otherwise, supplementing said works by pumping plants or other methods of affording drainage and protection as may be best suited to accomplish the purpose."

115 Or.—35

Again, they quote from the decree, as stating the purpose of the district, as follows:

"To provide where necessary, proper and suitable dikes or embankments to protect the above-described lands from overflow from the Willamette Slough at periods of high water, and to divert the streams which flow into said Willamette Slough from the West, around the proposed district, and to drain the land by ditch or otherwise, supplementing said works by pumping plants or other methods of affording drainage and protection as may be best suited to accomplish the purposes."

They further quote from the plan of reclamation as follows:

"The problem for the reclamation of this area is, first, protection from the annual overflow by the river, which must be accomplished by means of dikes surrounding the district. The second problem is to reduce the water level inside of the district to an elevation which will permit of the cultivation of all except the extremely low lake bed and slough areas. This involves the diversion or removal by means of gates and pumping, of all water which may reach the inside of the dike from rainfall, from hillside streams, or from possible seepage, either from the upper slopes or from the river."

1, 2. The reclamation plan provides for the interior drainage of the district. However, the nature of the improvements contemplated by the plan shows that the cost of construction of the levee exceeds by far the cost of the interior drainage; and the appellants rely chiefly upon this fact in their contention against the validity of the organization.

Under Section 7247, Or. L., 50 per cent of the record owners of the acreage in any contiguous body of swamp, wet or overflowed lands may form a drainage district for the purpose of having such lands

reclaimed and protected by drainage or otherwise. The end and aim of the act is to reclaim land. And it is not material whether the reclamation is brought about by draining the land of its surplus water or by constructing levees for the purpose of excluding it from entering upon the land.

That the construction of levees for the purpose of reclaiming wet or overflowed lands is within the purview of the Drainage Code is apparent from the language thereof. It is provided at Section 7254 that the engineer appointed by the board of supervisors shall make the necessary surveys of the land within the boundaries of the district that may or will be improved or reclaimed in part or in whole by any system of drainage or levees that might be outlined and adopted. Section 7272 provides that, where "the plan for reclamation" is insufficient to reclaim, in whole or in part, the lands of the district, "the board of supervisors shall have the right to formulate new or amended plans containing new ditches, levees, or other works." At Section 7259, levees are deemed a part of the system of reclamation which may be constructed under the provisions of the drainage law.

It was for the record owners of the lands sought to be reclaimed to determine whether they would organize and reclaim their lands to the extent permitted under the Levee Code or under the Drainage Code: *Lyon* v. *Board of Supervisors of Sac County,* 155 Iowa, 367 (136 N. W. 324).

"To drain land is to rid it of its superfluous moisture. Hence drainage as applied to land ordinarily contemplates the removal of water therefrom by means of an artificial channel or trench, but it may also include the construction of such ditches, drains, and embankments or levees as may be necessary to

prevent the accumulation of water." 19 C. J., § 1, Drains.

The case of *Holt* v. *State* (Tex. Civ. App.), 176 S. W. 743, 746, is directly in point. It was there contended that the tax levy showed that the purpose thereof was the creation of a district and the issuing of bonds for the protection of the land situate in the district from overflow by the erection of levees, and not to secure drainage therefor. The petition for the creation of the drainage district recites these facts:

"Said district lies partly on the Eastern bank of the Colorado River, and that by reason of the impediments to the flow of the water through the channel of the Colorado River, said territory was constantly menaced by overflow, and, unless some adequate means of protection be provided, the whole or greater part of said territory would be practically useless for agricultural purposes; that by the creation and maintenance of a levee along the Western boundary of such district, the greater part of such territory would be rendered susceptible to cultivation."

The engineer's estimate showed that the greater portion of the cost of the proposed improvement was the cost of erecting the necessary levees to prevent the overflow of the district by the flood waters of the Colorado River. The court, in discussing the case, gave the following comprehensive definition of drainage:

"Drainage in its larger sense includes, not only providing outlets and channels for relieving land from water which accumulates thereon, but also such ditches, drains, and embankments as may be necessary to prevent the accumulation of the water, and any system of drainage will involve, to some extent at least, the creation of embankments or levees. We do not think that the fact that the larger portion of the costs of the proposed undertaking was the con-

struction of embankments or levees prevented or rendered void the creation of the drainage district under the statute authorizing the creation of such districts.''

In the case of *In re Drainage District, Buschling* v. *Ackley,* 270 Mo. 157, 170 (192 S. W. 727, 731), it is written:

''A drainage system is designed primarily to drain or draw water from swampy and overflowed lands, and secondarily to prevent water from accumulating thereon by the overflow from streams, backwater, etc.''

Our Drainage Code was largely fashioned from that of the State of Missouri.

The case of *Royse et al.* v. *Evansville etc. R. Co.,* 160 Ind. 592 (67 N. E. 446), cited by counsel, fails to sustain their contention. It is based upon a statute quite unlike ours, and in the construction thereof the court held:

''If the construction of a levee is a work entirely foreign to the contemplation of the statute, the provisions of the enactment will not be extended to accomplish such purpose: *Scruggs* v. *Reese,* 128 Ind. 399 (27 N. E. 748).''

That section of the act involved in the decision of the Supreme Court of Indiana in the above case provides:

''That the board of commissioners * * are authorized * * to cause to be located and constructed, straightened, widened, altered, or deepened, any ditch, drain, or watercourse * * when the same is necessary to drain any lots * * .'' Acts 1891, p. 455, § 1.

It will be noted that the Indiana statute does not directly empower the board to construct a levee. Upon the other hand, our statute specifically au-

thorizes the construction of a levee as a part of a drainage system for the reclamation of swamp or overflowed lands.

Basing their objection upon the assumption that the district was not lawfully organized as a drainage district, the appellants next challenge the right of the district to levy special assessments to defray the cost of diking the lands thereof in order to exclude the floodwaters therefrom. The disposal of the objection as to the legality of the formation of the drainage district on the ground that it includes as a part of its reclamation system the construction of dikes likewise does away with any claim against the validity of assessments for carrying out such purpose.

3. Now, taking up the objection that a drainage district organized under our statute is without power to condemn land for the purpose of constructing dikes thereon: The Public Use and Welfare Amendment to Section 18, Article I, Oregon Constitution (Laws of Oregon, 1925, p. 5), permits legislation providing for the exercise of the right of eminent domain when "drainage is necessary to the development and welfare of the state." Section 7277, Or. L., empowers the district to institute a proper action to condemn lands for the construction of a dike. As we wrote in *Stafford et al.* v. *Multnomah County Drainage Dist. No. 1,* 103 Or. 197, 200 (204 Pac. 158):

"Condemnation proceedings are controlled by the statute in all jurisdictions. * * Condemnation proceedings are purely statutory and in derogation of common right, and the statutory authority must be strictly pursued and every condition or other prerequisite to the exercise of the jurisdiction observed."

By following the procedure prescribed by statute, a drainage district may condemn land for drainage works: 9 R. C. L., p. 621.

4. The appellants assert that the County Court was sitting for the transaction of "county business" when making the various orders relating to the organization and subsequent proceedings had by the officials of the drainage district. In *Harney Valley Irr. Dist.* v. *Weittenhiller,* 101 Or. 1, 198 Pac. 1093, this court held that the organization of an irrigation district was not "county business" within the meaning of Section 12, Article VII, Oregon Constitution.

5, 6. On August 7, 1922, the County Court, Martin J. White, county judge of Columbia County presiding, made an order fixing the time and place for hearing the petition for the organization of the Scappoose Drainage District. One W. J. Fullerton, a county commissioner of Columbia County, added his signature to that of the judge. Pursuant to the directions contained in the order, the county clerk gave notice to all persons concerned in the organization of the district, as provided by statute, that a hearing would be had upon the petition at the courthouse in St. Helens, Columbia County, Oregon, on October 4, 1922, at 10 o'clock A. M. The petition was heard in accordance with the notice. Nobody pretends to have been injured by the fact that the order made by the County Court also bore the signature of one of the county commissioners. Suppose the sheriff had added his signature to the order. Would this have rendered less effectual the direction to the clerk? Shorn of its narrow technical objection, the facts are that the county judge, presiding over the County Court, made a lawful order directing the clerk to give notice fixing a time for the hearing of the petition. The clerk gave notice in obedience to the command contained in that order. The hearing was had. It is our conclusion that by the filing of

the petition ·and the giving of the prescribed statutory notice, the County Court acquired jurisdiction of the subject matter and the persons of the owners of the lands involved. As to the sufficiency of the order to the clerk in any event, see *State* v. *MacElrath,* 49 Or. 294 (89 Pac. 803), wherein it is held that the making of the order was but a ministerial act. See, also, *Russell* v. *Crook County Court,* 75 Or. 168 (145 Pac. 653, 146 Pac. 806).

We have examined all the authorities cited by appellants upon this question. The cases referred to, however, are based upon a different set of facts, in this: that the judges, for various reasons, were disqualified to sit. In the instant case, the judge was qualified and had full jurisdiction to act in the premises. If, as contended, the county commissioner had no authority to act in the formation of the district, his unauthorized signature to the valid order made by the County Court was wholly without efficacy to add force to the order or to detract therefrom.

7. The time for hearing the petition for the organization of the district was set for October 4, 1922. When the matter came on for hearing the County Court was in session for the purpose of transacting "county business." The appellants contend that, inasmuch as the county judge was presiding at the term of County Court for the transaction of "county business," he could not lawfully divorce himself from such court and legally hear the petition for the organization of the drainage district. This position is untenable. It is not unusual that the county judge, during a regular term of County Court, ceases his duties in the transaction of "county business" and, sits in probate to approve a will or the final account of an administrator or executor. So, in the case at

bar, the county judge had a right to cease his duties in hearing matters involving his county, and to hear the petition for the organization of the drainage district.

Counsel for appellants assert that the district is without power to divert the waters of Jackson Creek as contemplated in the plan of reclamation. The district, however, asserts that it is not the intention to divert the waters of that creek so as to interfere with the use thereof by the owners of the land. It does not appear to the writer that the right to the natural flow without diminution of the waters of Jackson Creek is involved in this particular suit. But, while passing, we will observe that the district is empowered to invoke the right of eminent domain for the purpose of carrying out a lawful scheme of reclamation.

8. The appellants assert that the proceeding should fail because the district has no power to include within its boundaries lands that will not be benefited by the improvement as set forth in the plan of reclamation. It is a general rule that only such lands as will derive a benefit from the improvement should be included in a drainage district; and, in conforming to the expressed intention of the Oregon Drainage Code, only such lands as will be beneficially affected by the operation of the drainage system of the district should be included therein: Or. L., § 7247, subd. 6. The Oregon statute plainly contemplates the exclusion of lands not properly included in the proposed district: Or. L., § 7247, subd. 11, and § 7255. It could not benefit the district to retain lands not receiving any benefit from the proposed improvement, because a special assessment for drainage purposes must be levied upon property benefited: *Myles Salt*

*Co.* v. *Board of Commrs.*, 239 U. S. 478 (60 L. Ed. 392, L. R. A. 1918E, 190, 36 Sup. Ct. Rep. 204).

9. In the case at bar the court found, as a result of the hearing upon the petition for organization, that—

"All of the lands included in said district are properly included therein and will be beneficially affected by the operation of the district."

No appeal was taken from the order of the court organizing the district. Based upon the record, the presumption is that all lands included within the boundaries of the district will be beneficially affected by the construction and operation of the drainage system. In the event of the erroneous inclusion of lands in the order of the organization of the district, the law does not penalize the district by declaring such organization to be invalid, but supplies a remedy. Section 7255, Or. L., enacts:

"Any lands included in the district, which will not be reclaimed or benefited by the construction of the works as specified in the plan of reclamation, may be excluded from the district by order of the county court, and any tax levied thereon shall be refunded to the person or persons paying the same."

If there be owners of land situate in the Scappoose Drainage District, which lands will not be beneficially affected by the reclamation project, they should avail themselves of the provision of the above section: *In re Harper Irr. Dist.*, 108 Or. 598 (216 Pac. 1020).

The record containing no substantial error, the decree is affirmed.                              AFFIRMED.

BEAN, BELT and COSHOW, JJ., concur.

Objections to cost bill sustained and decree modified July 21, 1925.

## ON OBJECTIONS TO COST BILL.

(237 Pac. 1118.)

For the objections, *Messrs. Collier, Collier & Bernard* and *Mr. C. L. Whealdon.*

*Contra, Messrs. Ridgway, Johnson & Montgomery.*

PER CURIAM.—Upon the filing of the cost bill by the prevailing party, the appellants and contestants filed objections thereto and likewise petitioned the court for a modification of the decree by providing that neither party shall recover costs in this court. The appellants say:

"In presenting this motion, the attorneys for the objectors rely upon the fact that they represent a large portion of the land in said drainage district and that by reason of such holdings objectors will be taxed for the costs incurred by the drainage district and that it would be inequitable under the circumstances in this case to require the contestants to personally pay the costs; and they further rely upon Section 7359 of Oregon Laws relative to validation proceedings, the last portion of which reads:

" 'The costs of the special proceedings may be allowed and apportioned between the parties in the discretion of the court.' "

In view of Or. L., Sections 7358, 7359, 7360, providing for the securing of a judgment of confirmation of certain proceedings by drainage and irrigation districts, and the benefits accruing to all of the land owners situate in the drainage district, we believe that it would be equitable and fair to disallow costs to either party.

The decree will be modified in accordance with this direction.

> OBJECTIONS TO COST BILL SUSTAINED AND DECREE MODIFIED.

---

'(Case No. 11,152.)|

Argued June 16, affirmed July 14, objections to cost bill sustained and decree modified July 21, rehearing denied September 22, 1925.

(237 Pac. 1118.)'

From Columbia: JAMES A. EAKIN, Judge.

Department 2.

> AFFIRMED. DECREE MODIFIED. REHEARING DENIED.

For Scappoose Drainage District there was a brief over the name of *Messrs. Ridgway, Johnson & Montgomery,* with an oral argument by *Mr. Albert B. Ridgway.*

For appellant J. G. Watts et al., there was a brief over the names of *Messrs. Collier, Collier & Bernard* and *Mr. C. L. Whealdon,* with oral arguments by *Mr. Whealdon* and *Mr. H. E. Collier.*

BROWN, J.—On June 30, 1925, we decided appeal Number 11,346, affirming the decision of the Circuit Court of Columbia County confirming the proceedings had in connection with the organization of the Scappoose Drainage District under the provisions of Chapter 390, General Laws of Oregon 1919 (Or. L., §§ 7358, 7359, 7360), and the subsequent proceedings of such district, that appeal having been filed February 28, 1925.

This appeal was filed here on May 15, 1924, and is designated in our records as number 11,152. It comes to this court from a judgment of the Circuit Court on appeal from the order of the County Court in the matter of the commissioners' report assessing benefits and damages to the landholders of the Scappoose Drainage District.

The two cases, involving like issues and the same parties, by stipulation of counsel were consolidated for trial on appeal and were presented together, upon the same briefs and the same arguments.

In this particular case, the only question involved relates to the jurisdiction of the County Court. The case presents no issue other than those determined in our opinion rendered on June 30, 1925, wherein we held that the County Court possessed jurisdiction and affirmed the decree of the lower court. To re-state our holdings would be of no advantage to the parties or to the profession. We refer to that opinion for a statement of the case and our view as to the law governing the premises.

We have considered all alleged errors and irregularities, and find that the proceedings are free from substantial errors of commission or omission.

This case is affirmed.                    AFFIRMED.

BEAN, BELT and COSHOW, JJ., concur.

Rehearing denied September 22, 1925.

ON PETITION FOR REHEARING.

(239 Pac. 193.)

For the petition, *Mr. C. L. Whealdon* and *Mr. H. E. Collier.*

BROWN, J.—This court has held that the organization of the Scappoose Drainage District was legal. See 115 Or. 541 (237 Pac. 684). It has also held to be regular and lawful the proceedings involved in the appeal from the report of the commissioners assessing benefits and damages to the land owners of the district. See 115 Or. 556 (237 Pac. 1117), for memorandum opinion. The two cases were briefed, argued and submitted to this court together. Some of the land owners have filed a petition for a rehearing in the appeal from the report of commissioners assessing benefits and damages.

The matter of benefits and damages sustained by the land owners was tried at length before the County Court of Columbia County, eight days being consumed in presenting the testimony and hearing the arguments. Duplicate decrees were entered, one signed by the county judge and two county commissioners, another by the County Court presided over by the county judge without the assistance of the commissioners.

In the organization of an irrigation district, jurisdiction is vested in the County Court sitting for the transaction of civil business: *Harney Valley Irr. Dist.* v. *Weittenhiller,* 101 Or. 1 (198 Pac. 1093). It was also held in that case that the County Court had jurisdiction to make the order of organization of an irrigation district without the attendance of the county commissioners.

The petition for rehearing is based upon the theory that the commissioners of Columbia County had no right to sit with the county judge in hearing the case, and that, because they were present at the hearing, the judgment rendered is absolutely void. They contend that there is neither precedent nor decision for sustaining the action of the County Court when so constituted. This contention is erroneous. The records of this court reveal that our former decision in this matter is sustained by many precedents. While the organization of irrigation and drainage districts is not county business, it has never been held that the County Court is ousted of jurisdiction rightfully and lawfully acquired by the presence of one or two of the county commissioners. Our clerk's office is replete with transcripts of records of the organization of irrigation and drainage districts and subsequent proceedings, which show, as in the instant case, the attendance of the county commissioners with the county judge in adjudicating the regularity of the organization of such districts; and this court has held the proceedings, as evidenced by such records, to be in all things lawful and regular. Moreover, much money has been invested in this state on the strength of such decisions. As a concrete example of the many cases holding to that effect, see *In re Grants Pass Irr. Dist.*, 87 Or. 643 (171 Pac. 486). In that case, confirmatory proceedings were instituted by the directors of the irrigation district, to obtain from the court an order declaring valid and legal all of the steps leading up to the organization of the district and the election held for the issuance and sale of bonds of the district. The transcript in that case shows that judicial orders were made by the County Court, the two commissioners being present with the county judge; and this court affirmed the decision of

the lower court, declaring regular in all respects the organization, the existence of the district, and the validity of the bonds. In rendering a *per curiam* opinion, the court said, among other things:

"The briefs filed indicate that the proceeding is amicable and designed mainly to secure the judicial *visé* as imparting greater sanction to the bonds with the possible result of making them more saleable. Notwithstanding this, we have given careful scrutiny to the history of the organization of the district and its action culminating in the authorization of the bond issue as portrayed in the very full record before us *and find it to be singularly free from error.*"

In these many confirmatory proceedings contained in our files, it may be contended that the question of jurisdiction was not raised by the parties to the proceeding. However, the law says, in effect, that, in a proceeding to confirm the organization of an irrigation district, the question of jurisdiction presents itself to the court in every case, whether called to its attention by the parties to the litigation or not. See case of *Defiance Water Co.* v. *Defiance,* 191 U. S. 184 (48 L. Ed. 140, 24 Sup. Ct. Rep. 63), wherein the Supreme Court of the United States, speaking through Mr. Chief Justice Fuller, thus declared the law:

"The fundamental question of jurisdiction, first, of this court, and then of the court from which the record comes, presents itself on every writ of error or appeal, and must be answered by the court, whether propounded by counsel or not."

See, also, *Evans* v. *Christian,* 4 Or. 375; *Evarts* v. *Steger,* 5 Or. 147; *Dippold* v. *Cathlamet Timber Co.,* 98 Or. 183 (193 Pac. 909), and the authorities there noted.

In determining as to the regularity of the proceedings involved in the organization of drainage and irrigation districts, this court is not a court of original or concurrent jurisdiction. It is strictly an appellate court, and, as such, has power to confirm the organization of such districts and the subsequent proceedings thereof upon appeal from an order of a competent court. Moreover, the many orders of record here establishing irrigation and drainage districts which this court has approved have been uniformly upheld as the valid orders of a competent County Court, notwithstanding the records show the presence of the commissioners.

In view of the foregoing, we are compelled to deny the petition for rehearing.   Rehearing Denied.

Bean, Belt and Coshow, JJ., concur.