Argued September 14, affirmed October 19, petition for
rehearing denied December 21, 1955

# DELTA FARMS *v.* SCAPPOOSE DRAINAGE
# DISTRICT ET AL

288 P. 2d 816
291 P. 2d 762

*Robert L. Myers,* of Portland, argued the cause for appellant. With him on the brief were Winfree, McCulloch, Shuler & Sayre, of Portland.

*Virgil Crum* argued the cause for respondent. On the brief were Crum and Smith, of Portland.

Before WARNER, Chief Justice, and TOOZE, ROSSMAN, LUSK and LATOURETTE, Justices.

LATOURETTE, J.

This is an injunction suit to restrain the Scappoose Drainage District and the Assessor of Columbia county from collecting certain assessments against plaintiff's land alleged to be illegal. The trial court held for plaintiff. Defendant Scappoose Drainage District appeals.

The Scappoose Drainage District was organized in 1921 and is located in Columbia county. Plaintiff is the owner of various tracts of land lying within the drainage district. A decree of confirmation of the proceedings had in connection with the organization of the district and the subsequent proceedings thereof finally was obtained in this court in *In Re Scappoose Drainage District,* 115 Or 541, 237 P 684.

When the district was organized, the drainage commissioners created five zones, defining zone 1 as:

"Zone 1. Lands receiving no benefits. All lands lying within the District, above elevation 28, below elevation 3.5, outside of the inner toe of dike, occupied by and used for diversion and main drainage ditches, site for pumping plant, occupied by and used for borrow pits inside of the inner toe of dike, and land inside of dike, where damages have been paid for rights of way."

Since lands lying within zone 1 received no benefits, they were not assessed by the district. The 34.8 acres of low lying lands involved in this suit were automatically placed in this zone and therefore were not assessed. In 1937 the legislature enacted the following law, which is now ORS 547.465:

"Whenever lands located in a drainage district which, because of their low elevation, were not assessed benefits in accordance with ORS 547.225, are used for growing crops, the board of supervisors may levy an annual assessment against such lands

for maintenance and operation, not to exceed 100 percent of the rate levied against assessed lands in the district having the lowest elevation. The assessments shall be collected in the same manner as other assessments for maintenance and operation in drainage districts are collected.''

Acting under the above law, the board of supervisors of said district, determining that the above acreage was used for growing crops, proceeded to levy assessments against the same. Plaintiff claims the land is not so used. The trial judge, an experienced judge of many years of distinguished service and familiar with drainage problems within his district, made a personal inspection of the locus in quo. We quote from a portion of his opinion:

"* * * Furthermore, the evidence submitted at the trial does not indicate that the lands in question were used for growing crops. There is no evidence at all that the lands were cultivated or that crops were planted thereon. The only showing is that after the season when the lands in question were flooded and any clover or other domestic grasses were killed out thereby, there was certain wild grass which grew thereon, and that possibly the owner of the land derived some benefit therefrom by having his cattle graze thereon. It would be impossible to say that the growth of native wild grass constituted any use of the land for growing crops in my opinion. Certainly this would be true in the absence of evidence that the amount or quality of such wild grasses were such as to give them some substantial value, all of which is lacking in the evidence.''

*In Weddle et al. v. Parrish,* 135 Or 345, 295 P 454, we said:

"* * * the word 'crop' usually does not apply to grass growing on depastured lands: Moore v. Hope Natural Gas Co., 76 W. Va. 649, 656 (86 S. E. 564).''

Since the land in question was not used for growing crops the assessment was void.

There is another phase of this case involving approximately 60 acres of plaintiff's land which it claims the drainage district assessed illegally. When the district was organized this acreage was included in zone 2 and was properly assessed. On March 11, 1937, plaintiff and defendant entered into a right of way easement agreement wherein plaintiff granted to the district the right to dig ditches and drains on its lands for the purpose of draining the lands in the district. The agreement provided that after the ditches and drains were located by the district the same should become the property of the drainage district. There was a further provision in the agreement that the district should furnish to the plaintiff a description and location of the ditches whereupon the plaintiff would convey to it rights of way for the ditches according to the description.

Pursuant to the agreement, the drainage district went onto plaintiff's property and constructed drainage ditches occupying, according to the findings of the court, 60 acres of plaintiff's land. However, after the occupancy of the land by the district for ditch purposes, this land was not taken off the assessment rolls and the district continued to include it in making up its assessments. In *In Re Scappoose Drainage District,* supra, we find the following language:

"* * * It is a general rule that only such lands as will derive a benefit from the improvement should be included in a drainage district; and, in conforming to the expressed intention of the Oregon Drainage Code, only such lands as will be beneficially affected by the operation of the drainage system of the district should be included therein: Or. L., § 7247, subd. 6."

The above rule was recognized by the drainage district commissioners when they created zone 1. They styled it as "lands receiving no benefits" and included within it lands "occupied by and used for diversion and main drainage ditches." When the drainage district acquired the property occupied by the ditches, this land should have been removed from the assessment rolls.

The defendant argues that since plaintiff never executed to it a deed with an accurate description covering the rights of way, the fee title remains in plaintiff and the land is therefore assessable. Irrespective of where the fee lies, the property involved would not be assessable for the reason that it receives no benefits, and therefore, as above indicated, was not taxable.

The defendant contends that there is insufficient evidence to warrant the court's finding that 60 acres were occupied by ditches. The plaintiff's testimony in this respect was uncontradicted. Under the terms of the easement agreement it was the duty of the district to furnish plaintiff a description and location of the ditches. This it failed to do. It is in no position to complain about a situation that it might have obviated.

■ Defendant complains of the method employed by the court to arrive at the amount of the tax plaintiffs should pay. The court computed plaintiff's total acreage which had been assessed by the defendant and the total assessment levied against the same and reduced this to a certain assessment per acre. It then deducted from the total assessed acreage the acreage that should have been excluded from the assessment. The remaining acreage was then assessed at the per acre assessment rate.

Defendant claims the method to be adopted to determine plaintiff's assessment in a given year should be

an amount which bears the same relationship to the total amount of assessments for the district as plaintiff's benefits bear to the total benefits of the district. Defendant's formula of course would be proper if it could at this time be applied to all property in the district. However, since the other property owners have paid their assessments, or are presumed to have paid them, based on the original assessment formula, if plaintiff's assessment were readjusted on the benefit theory, plaintiff's reassessment would exceed that proportionate share of the budget paid by any other taxpayer in the district, which would be unjust and inequitable. In our opinion, the computation arrived at by the trial court was practical and proper under the circumstances.

■ There is another feature of the case that needs consideration, that is, the applicability of ORS 311.120, which permits the reassessment where a proceeding has been adjudged void. The above law would not apply in the instant case since we have held that the property involved is not subject to assessment at all. There are a number of other questions raised in defendant's brief which we have carefully considered. We find no merit in them.

Affirmed.

## ON REHEARING

ON PETITION FOR REHEARING

*Robert L. Myers,* of Portland, and *Winfree, Mc-Culloch, Shuler & Sayre,* of Portland, for petition.

*Virgil Crum,* of Portland, contra.

Before WARNER, Chief Justice, and TOOZE, ROSSMAN, LUSK and LATOURETTE, Justices.

## LATOURETTE, J.

The drainage district has filed a petition for rehearing accompanied by a brief claiming that the trial court erred in determining the number of acres assessable against Delta Farms. On request by the Court, Delta Farms has filed an answering brief. No objection is made to the formula adopted by us in our opinion. In fact, the drainage district now states "We agree with the Court that this is a practical and equitable method to be applied in this case."

It is argued that at the time of the levy, the zone acreage belonging to Delta Farms embraced 837.86 acres and to arrive at a proper assessment we should deduct from the above figure the acreage that we held non-assessable. In our opinion this would be improper

because included in that figure are 87.62 acres in zone 1 which received no benefits and were therefore not included in the original levy.

We must therefore start with 750.24 acres, that being the total acreage originally assessed by the district. From this must be deducted 186.86 acres which were determined by us to have been erroneously assessed, which would leave 563.38 acres upon which Delta Farms should pay taxes. A dollar assessment per acre is arrived at by dividing the total assessable acres (750.24) into Delta Farm's total assessment for each of the three years in question (1949/50-$6,725.44; 1950/51-$6,935.51; and 1951/52-$8,533.99). The results of this computation are, respectively, $8.96, $9.24 and $11.39. Applying these figures to the assessable acreage, Delta Farms is liable for an assessment of $16,664.36 instead of the $15,432.66 heretofore determined to be owing by the trial court. Having tendered into court $16,163.41, Delta Farms is liable for a further assessment of $500.95.

The decree of the trial court will be modified in the above respect.