Argued July 6, remanded with directions September 7, petition
for rehearing denied October 4, 1960

# POWELL *v.* STATE BOARD OF PILOT
# COMMISSIONERS

355 P. 2d 224

*Alex L. Parks,* Portland, argued the cause for appellant. On the briefs were Dusenbery, Martin, Beatty & Parks, Portland.

*Louis S. Bonney,* Assistant Attorney General, Salem, argued the cause for respondent State of Oregon. With him on the brief was Robert Y. Thornton, Attorney General, Salem.

*Gunther Krause,* Portland, argued the cause for respondent Portland Steamship Operators Association, Inc. With him on the brief were Carl R. Neil and Krause, Lindsay & Nahstoll, Portland.

Before McAllister, Chief Justice, and Rossman, Warner, Perry, Sloan, O'Connell and Goodwin, Jusices.

## SLOAN, J.

Plaintiff appeals from an adverse declaratory judgment. Plaintiff is a Columbia River pilot. The pilots operate and govern themselves by means of a voluntary association: The Columbia River Pilots Association. Plaintiff is acting for all of the members of that association. The Board of Pilot Commissioners is an administrative agency created by Oregon Laws 1957, ch 448 (codified as ORS ch 776). That statute empowered the board to: "Provide for efficient and competent pilotage service. . ." to "Fix, at reasonable and just rates, pilotage fees. . ." and to "Adopt any rule or regulation or make any order, not inconsistent with law, for the effective administration and enforcement of this chapter." The defendant Portland Steamship Operators Association, Inc. is a

nonprofit corporation. Its members consist of nearly all of the shipowners or agents who utilize the services of the Columbia River pilots. Prior to the creation of the board in 1957 the legislature, beginning with the territorial legislature, had itself fixed pilot fees.

After the board was created, the pilots petitioned the board for an increase in the rates then existing. The board granted only a part of the increase requested. Thereafter the pilots association published a set of rules which included certain fees for services for which charges had not previously been made. The rules and charges published by the pilots association was designated as "Columbia River Pilots Tariff No. 1". The tariff also included certain rules governing various functions of the pilots. The conceded purpose of the tariff was to increase the income of the pilots beyond that provided by the fees fixed by the board. One of the rules contained in the pilots' tariff required the payment of an additional fee to the pilot for "docking and undocking" a vessel. No such charge had been exacted by the pilots since at least 1921. This particular charge or fee was the cause of most of the argument in this case, both in the trial court and here.

The shipowners refused to pay the additional charges demanded by the pilots and refused to conform to the rules contained in the tariff. Later, the board, apparently acting on its own motion, adopted a resolution which recited that the board had the jurisdiction to fix the rates "for services covering all charges incidental to pilotage; that any such charges not established by action of this commission may not be exacted by pilots without impairing the authority of this commission; and therefore that Tariff No. 1

published by the Columbia River Pilots Association . . . includes charges not established by the commission;". The resolution of the board stated that any attempt by a pilot to collect the charges would subject the pilot to disciplinary action; i.e., loss of license. The pilots then filed with the board a request for a hearing. The request was joined in by the shipowners. The board refused to hold a hearing. We are not advised as to the reasons for the board's refusal.

This form of the ruling of the board by resolution has not been challenged. The record does not specifically show that any notice or hearing preceded the issuance of the resolution. We notice that ORS 776.125 provides that the board shall make no finding or order until after a publicized hearing. We will not attempt to pass on this question. The parties have adhered to the resolution pending the result of this case.

The plaintiff then filed this declaratory proceeding. Plaintiff contends that the jurisdiction of the board does not include the power to fix rates for docking or undocking a vessel. He also disputes the power of the board to interfere with certain rules adopted by the pilots with reference to standby time, moving a vessel from one place in a harbor to another and similar functions governing the conduct of the pilots. Plaintiff bases his case on the theory that the language of the statute granting the board power to fix "pilotage fees" is limited strictly to the services of a pilot in guiding a ship from Astoria to Portland and other upriver ports and return; that any other charges are beyond the jurisdiction of the board.

The parties stipulated that a controversy existed and that the court had jurisdiction of the parties

and subject matter. The trial court assumed jurisdiction and held against plaintiff's contentions. Even though the statute, ORS 776.165, et seq., provides a precise form of appeal from any ruling of the board, none of the parties question the court's jurisdiction to proceed by a declaratory proceeding. They apparently assume that they can stipulate jurisdiction into existence. We do not agree. It is fundamental that the parties may not stipulate themselves into the jurisdiction of a court if no other basis for jurisdiction exists. *Fox et ux v. Lasley,* 1957, 212 Or 80, 93, 318 P2d 933. The court must notice any failure of jurisdiction even though not mentioned by any of the parties. *Evans v. Christian,* 1873, 4 Or 375; *In re Scappoose Drainage Dist.,* 1925, 115 Or 541, 560, 237 P 684, 1117, 1118, 239 P 193. For the reasons which follow we think the court had no jurisdiction to proceed further once it found that the Board of Pilot Commissioners had the power to invoke the order contained in the resolution before mentioned.

This limited review of the events which spawned this proceeding may give some idea of the difficulty the case presents to this court. There is actually no order or proceeding of the Board of Pilot Commissioners that we are called upon to review. The only action by the board which presents any question as to the board's power is found in the resolution we have mentioned. The board has not seen fit to adopt any rules or regulations or to hold hearings to determine what, if any, rates or rules it should adopt other than those already promulgated. There is no contention that the board has acted capriciously. It is to be emphasized that plaintiff's sole contention is that the word "pilotage" as read in the statute authorizing the board to fix rates therefor must receive a very

strict construction and that the board has authority only to fix rates for guiding a vessel up or down-river but nothing else. Plaintiff would have us hold that any other service performed by the pilots is to be governed by the pilots.

■ We assume that plaintiff thinks that since the board does not have jurisdiction to set rates for docking and undocking a vessel, for example, then the statutory procedure for judicial review, ORS 776.165, et seq., need not be followed. We think the board does have jurisdiction to fix or refuse to fix the rates complained of. In that event the only judicial review available is that provided by ORS 776.165, et seq. The statutory procedure both for action by the board and for judicial review is exclusive. *P.U.C. Com. v. Portland Traction Co.*, 222 Or 614, 351 P2d 344. When the means for "approach" to the court is provided by statute no other procedure is available. *Liimatainen v. State Indus. Acc. Com.*, 1926, 118 Or 260, 278, 246 P 741.

If it were possible to find some acceptable definition of the word "pilotage" there would be no problem. As indicated, plaintiff would have us define it as limited to the act of guiding a vessel from one port on the Columbia River to another port. The shipowners and the board argue that the word is all-inclusive and includes every act performed by the pilots and those functions incidental thereto. A search for some workable definition has been interesting but rather futile. An examination of many cases, text-books and other material involving pilots and pilotage does not disclose any attempt to define the word pilotage. The explanation appears clear.

The services rendered by pilots, the skill required, the extent and character of the regulations of pilots

and their charges and services varies from port to port. Not only in this country, but throughout the world. A comprehensive report on "Pilotage in the United States" written by Grosvenor M. Jones, and published by the United States Department of Commerce in 1917 provides the most complete documentation on the subject that we have found. It includes some reference to a similar comprehensive study made by the English Board of Trade in 1911.

The latter study reveals that prior to 1913 the control of pilots was vested in the agencies which governed the numerous English ports. As a result there was a complete lack of uniformity in the methods and manner of the control of pilotage. In 1913, Parliament vested control of all pilotage in the Board of Trade. It appears from the report to Parliament that some form of control over pilotage had existed in England and other European countries since about the 14th century.

In the United States, Massachusetts adopted laws regulating pilotage as early as 1783. Some of the other states adopted regulatory laws shortly after Congress, in 1789, specifically provided that the states should exercise control over most of the forms of pilotage. In 1803, Pennsylvania enacted a detailed statute regulating pilots and pilotage and providing for a Board of Wardens to administer the act. This act was eventually tested by the Supreme Court of the United States in *Cooley v. Board of Wardens of Port of Philadelphia, et al,* 1851, 12 How 299, 53 US 299, 13 L Ed 996. Reference to the long history of pilotage is also found in the case of *Kotch v. Pilot Comm'rs.,* 1947, 330 US 552, 67 S Ct 910, 91 L Ed 1093. The Kotch case involved the actions of the Louisiana State Board of River Pilots Commissioners

and the statutes of Louisiana involving pilots. The latter were first enacted in 1805.

Nothing would be added by referring to other cases and writings on the subject. From a reading of the cases, statutes and the reports we have mentioned, one thing is clear. The word pilotage is used in an all-inclusive sense. Nowhere do we find the term limited in scope to such details as docking and undocking a vessel, as the plaintiff would ask us to do.

It is true that the functions of pilots are frequently limited in respect to the problems or hazards of the particular ports and of the means of entry. For example, the division of skill and duty between the Columbia River Bar Pilots, whose pilot grounds terminate at the uppermost dock at the port of Astoria or Knappton, ORS 776.025 (1), and the Columbia River Pilots whose pilot grounds extend from the lowermost dock or wharf at the Port of Astoria to the head of navigation on the Columbia and Willamette rivers and their tributaries, ORS 776.025 (2). It is significant that the pilot grounds extend to the dock or wharf. The same division of skill apparently also exists at the entry to the Mississippi River. Bar pilots guide the vessel through the Mississippi delta, river pilots guide the vessel in the river. Kane, Deep Delta Country, 1944, p 127.

But within the limits of a particular pilot ground or area of function the term pilotage is used to express the entire exercise of the skill and function of piloting. By example, the English Act of 1913 is entitled simply: "The Pilotage Act, 1913". Every reference in that act, and there are many, to the formulation of rules, pilotage districts, etc., is by the

simple term "pilotage". Nothing would indicate that the word is one of limited meaning. The term is used in the cases and other writings in the same general way.

Other sections of ch 776 lend some significance. ORS 776.115 (7) provides that in fixing rates the board shall "give due regard to the following factors:

"(a) The length and net tonnage of the vessels to be piloted.

"(b) The difficulty and inconvenience of the particular service and skill required to render it.

"(c) The supply of and demand for pilotage services.

"(d) The public interest in maintaining efficient, economical and reliable pilotage service."

These requirements do not indicate that the board is to act with limited scope.

The same chapter also vested the board with power to license the pilots. The act prescribed some of the qualifications an applicant for a license should possess. The board was authorized to fix additional qualifications. Among the qualifications imposed by the legislature is that the pilot must possess "the requisite skill and the experience as a navigator and pilot, together with practical knowledge of the currents, tides, soundings, bearings and distances of the several shoals, rocks, bars, *points of landing,* lights and fog signals of or pertaining to the navigation of the pilot ground for which he applies for a license to act as pilot." (Emphasis supplied) ORS 776.325 (1) (d).

■ The power to license is related to the other powers of the board to rule and regulate. It appears

to us that any act performed by a pilot within the contemplation of his license is pilotage.

"A statute is passed as a whole and not in parts or sections and is animated by one general purpose and intent. Consequently, each part or section should be construed in connection with every other part or section so as to produce a harmonious whole." 2 Sutherland, Statutory Construction, (3rd ed) p 336, § 4703.

When we examine the entire statute we think the intent of the legislature was clear. It does not make sense that it would enact a comprehensive regulatory statute and then leave wide gaps of authority, the effect of which would render the statute meaningless. If the plaintiff were to prevail the basic power of the commission—to fix rates—would be of no avail. The pilots could circumvent any limitation on the rates fixed by the board by devices such as that proposed in this case.

We hold that the full scope of the legislative grant of power to the board includes the power to regulate every service performed by a pilot as a pilot in accordance with his license and any acts of the pilot necessary to the ultimate performance of that service.

Since we hold that the board has jurisdiction of the issues presented here, we will go no further. The rules proposed by the pilots have no legal efficacy. They could be considered as nothing more than proposals to the board. We cannot purport to tell the board, in advance, what rules it may or may not adopt. Until the board does so there is nothing for the court to review. We think the trial court was in error in assuming jurisdiction of the case beyond

deciding that the issues presented were within the power of the board to decide. When that is determined there is no further action the court should take.

The cause is remanded with directions to enter a decree in accordance with this opinion. Costs to neither party.