Argued January 11, reversed February 1, objections to
cost bill sustained April 5, 1961

## WILLAMETTE VALLEY LUMBER CO. *v.*
## STATE TAX COMMISSION
## SANTIAM LUMBER COMPANY *v.*
## STATE TAX COMMISSION

359 P. 2d 98
360 P. 2d 926

*Theodore W. deLooze,* Assistant Attorney General, Salem, argued the cause for appellants. With him on the briefs was Robert Y. Thornton, Attorney General, Salem.

*Norman J. Wiener,* Portland, argued the cause for respondents. With him on the brief were Jean P. Lowman and King, Miller, Anderson, Nash & Yerke, Portland.

Before McALLISTER, Chief Justice, and ROSSMAN, WARNER, PERRY, SLOAN, O'CONNELL and GOODWIN, Justices.

GOODWIN, J.

This is a consolidated appeal by the State Tax Commission from two judgments which allowed writs of prohibition in favor of taxpayers. The proceedings below challenged the jurisdiction of the commission to increase the taxpayers' 1957-58 assessments of personal property after the taxes had been assessed and paid.

The commission appealed from both judgments upon the ground that the trial court erred when it allowed the writs of prohibition. There are two assignments of error: (1) assumption of jurisdiction by the trial court; and (2) the finding by the court that the commission was without jurisdiction to continue its proceedings. Before we consider the availability of the writ of prohibition in the cases at bar, a brief statement of facts may be helpful.

The taxpayers are engaged in the lumber business in Linn County. In February 1957, they made their

personal-property tax returns for the tax year 1957-58 within the time required by ORS 308.290. In March 1957, the Linn County Assessor concluded that the returns were subject to question on two counts: omitted property and undervalued property.

Between March 19 and May 1, 1957, while questioning the returns, the assessor placed upon the assessment rolls the values reported by the taxpayers. In due course, but without taking specific action upon the returns now in question, the County Board of Equalization met as provided by law and equalized the assessment rolls for Linn County. Thereafter, in August of the same year, the assessor entered into conferences with the taxpayers concerning both the matter of omitted property and the matter of undervalued property. These conferences resulted in an agreement by the taxpayers that property had been omitted and it was conceded that the assessments should be revised pursuant to ORS 311.210. Corrections were made, and the matter of omitted property is no longer before the court.

Following the corrections referred to above, the assessor presumably delivered the assessment rolls to the sheriff on or about October 15, 1957, as required by ORS 311.115. Thereafter the taxpayers were billed, and paid the taxes assessed. On February 6, 1958, some months after the taxes for the tax year 1957-58 had been paid, the taxpayers were given written notice that the commission intended to hold a hearing under ORS 306.090[1] to determine whether or not the per-

---

[1] "306.090 Supervisory power of commission. The State Tax Commission shall exercise general supervision of the system of taxation throughout the state, and general supervision and control over the administration of the assessment and tax laws and over county assessors and county boards of equalization in the performance of their duties relating to taxation to the end that all taxable property is assessed uniformly according to law and equality of taxation according to law is secured."

sonal property returns for that year should be revised upward because of the alleged undervaluation of certain property.

A number of administrative proceedings followed, with interlocutory results in each instance adverse to the taxpayers, and on December 4, 1959, while further proceedings were pending before the commission, each of the taxpayers filed a petition for a writ of prohibition in the Circuit Court for Linn County. Each petition prayed for an order restraining the commission from taking any further action against the interests of the taxpayers for the year 1957-58.

The trial court assumed jurisdiction to hear the petitions over the continuing objection of the commission that the writ of prohibition was not available in view of express statutory enactments making the remedies under the tax laws exclusive in all contested matters involving ad valorem taxation.

The commission relies upon the following sections:

"[ORS] 306.510 Judicial review of commissioner's order to county assessor or board of equalization. (1) Any taxpayer whose property is affected by an order or direction of the State Tax Commission made to a county assessor or county board of equalization under the authority contained in ORS 306.090 or 306.130, may, within six months after the order or direction has become actually known to the taxpayer, but in any event not more than two years after the order or direction becomes a matter of public record, appeal directly to the circuit court of the county in which the property affected is located. The appeal shall be perfected in the following manner only:

"(1) * * *

"(d) Within 20 days after receipt of the copy of the petition, the commission shall file with the county clerk a certified copy of the order or di-

rection from which the taxpayer is appealing, unless a copy has been filed previously. The circuit court shall then have jurisdiction of the matter.

"(2) Appeals shall be heard and determined by the court in a summary manner as a suit in equity, except as provided in this section. The court may affirm the order or direction of the commission or may reverse, modify or remand it to the commission. In case of reversal, modification or remanding, the court shall make special findings indicating clearly all respects in which the commission's order is erroneous.

"(3) The provisions of ORS 306.560 to 306.580 shall be applicable to appeals taken pursuant to this section.

"* * * * *

"306.580 Remedies as exclusive. The remedies provided for in ORS 306.510 to 306.575 and 306.710 shall be exclusive and no taxpayer or county officer shall maintain any suit, action, or special proceeding in any court of this state with respect to the assessment and taxation of property or the collection of any tax thereon on any grounds, including fraud, where it shall appear that such remedies were available to him."

The statutes set forth above, and particularly ORS 306.580, contemplate the exhaustion of administrative remedies before going to court. For a detailed study of the doctrine of exhaustion, see 3 Davis, Administrative Law Treatise 67, § 20.03.

■■ It will be remembered that the classic role of the writ of prohibition is to provide a speedy remedy at law when a tribunal of limited jurisdiction asserts a power it does not possess. However, in *Southern Pacific Co. v. Heltzel*, 201 Or 1, 268 P2d 605, where this court traced the history and employment of the ancient writ in such cases, Mr. Justice ROSSMAN observed that

the availability of the writ was subject to statutory enactments, if any, to the contrary. Like the other prerogative writs with which it is associated, the writ of prohibition "is to be used with great caution and forbearance, for the furtherance of justice, and for securing order and regularity in all the tribunals, when there is no other regular and ordinary remedy." Per Shaw, C. J., in *Washburn v. Phillips & others,* 2 Met 296, 298 (43 Mass 296, 1841).

■ The fact that direct access to the courts might be more speedy and less burdensome than the route provided by statute does not necessarily justify judicial intervention in the executive or legislative process when the legislature has provided an exclusive remedy which is adequate. *Powell v. State Bd. of Pilot Com'rs,* 224 Or 122, 355 P2d 224; *P. U. Com. v. Portland Traction Co.,* 222 Or 614, 331 P2d 344.

Federal and state decisions which justify judicial intervention in pending administrative proceedings upon the ground of irreparable injury are not in point in the case at bar because no such claim can be supported. Under the judicial review provisions of ORS 306.510 et seq., and the refund procedure available under ORS 311.805 (now 311.806), the type of irreparable injury contemplated in such cases as *Southern Pacific Co. v. Heltzel,* supra, does not exist. See Carrow, *Types of Judicial Relief from Administrative Action,* 58 Col L Rev 1, 8; 3 Davis, Administrative Law Treatise, supra at 69.

The taxpayers have contended that the exclusive appeal procedure under the sections quoted above refers only to the review of final actions and orders on their merits. They contend that where the jurisdiction of the commission to act is the only matter in issue,

the writ of prohibition should be available to test jurisdiction. This contention must be rejected. ORS 306.580 provides that no proceeding in court may be undertaken except as stated therein.

It should be borne in mind that we are not confronted with a choice between judicial intervention and administrative finality. We have only to consider the timeliness of judicial review of administrative action. The temptation to utilize the most direct route must be overcome by the legislative injunction to take the other. The federal courts have answered the argument that the route which requires the exhaustion of administrative remedies is burdensome in these words by Judge Augustus N. Hand: "The justification for the burden upon the individual of subjecting him to such [administrative] proceedings instead of stopping them at the outset by injunctive or other relief in the courts lies in the absence of an alternative consistent with the orderly conduct of the government's business * * *." *United States v. Kauten,* 133 F2d 703, 706 (2d Cir., 1943).

Since the decision of *Myers v. Bethlehem Corp.,* 303 US 41, 58 S Ct 459, 82 LEd 638, it is now established in federal administrative law that the agency concerned is, in the first instance, its own judge of the scope of its jurisdiction. The rule is not without criticism and is not always followed. See Schwartz, *Jurisdiction to Determine Jurisdiction in Federal Administrative Law,* 38 Geo L J 368; 3 Davis, Administrative Law Treatise, supra at 56, § 20.01. But the alternative would be to leave the matter to the discretion of the litigants.

After analyzing federal decisions in which the courts have granted or refused interlocutory relief,

Professor Davis concludes that no absolute rule can be supported. He suggests that consideration be given three key factors: extent of injury from pursuit of administrative remedy, degree of apparent clarity or doubt about administrative jurisdiction, and involvement of specialized administrative understanding in the question of jurisdiction.

■ Weighing the case at bar against the factors suggested, we find that there is no showing of irreparable injury, no manifest want of jurisdiction on the face of the matter, and a jurisdictional question of a kind that is ordinarily within the competence of the specialized agency to consider.

If the existence of jurisdiction in the tax commission in any given case is doubtful, to permit the taxpayer to decide that there is a jurisdictional question and thus to gain premature entry to the courts would destroy the principle of exclusive review provided by the legislation referred to above. We conclude, therefore, that the taxpayers must be left to the review available under the quoted statutes. If the commission has asserted jurisdiction which it does not possess, that question can be reviewed in the appropriate proceedings.

In view of our determination that the judgment of the trial court must be reversed with instructions to dismiss the petitions, we will not discuss the ultimate question of the commission's power to accomplish the results suggested in the commission letter of February 6, 1958, which gave rise to the present controversy. We note, however, that certain sections of the statutes as they existed when the controversy arose have been amended by the Legislative Assembly, and that the precise question involved in this case for the tax year 1957-58 is not likely to be presented with reference to'

later tax years. In the event the matters pending with reference to 1957-58 are not resolved in the proceedings contemplated by the tax statutes, this court will consider such remaining questions as may properly be presented.

Reversed with instructions.

\* \* \* \* \*

King, Miller, Anderson, Nash & Yerke, Norman J. Wiener, and Jean P. Lowman, Portland, for the motion.

Robert Y. Thornton, Attorney General, and Theodore W. deLooze, Assistant Attorney General, Salem, contra.

Before McAllister, Chief Justice, and Rossman, Warner, Perry, Sloan, O'Connell, and Goodwin, Justices.

PER CURIAM.

The taxpayers in the two cases bearing the same title have filed objections to the cost bill submitted by the State Tax Commission.

The question presented is whether the prevailing party may recover costs in a proceeding for a writ of prohibition. The taxpayers contend that because the statutes creating certain writs provide for costs, and because there is no statutory provision for the writ of prohibition, costs are not recoverable. They cite the general rule that in the absence of statute costs are not recoverable. 14 Am Jur, Costs 16-17, § 23.

The matter is covered in Oregon by ORS 20.100, which reads in part as follows:

"* * * In any action, suit, or proceeding as to which the allowance and recovery of costs may not be provided for by statute, costs may be allowed or not, according to the measure prescribed in this chapter, and apportioned among the parties, in the discretion of the court."

■ Prohibition being a special proceeding, of common-law origin, *Southern Pacific Co. v. Heltzel*, 201

Or 1, 268 P2d 605, it falls within the quoted language of ORS 20.100. The court therefor may allow costs or not, as in equity, according to its discretion. *State ex rel. v. Bassett,* 166 Or 628, 642, 113 P2d 432, 114 P2d 546.

■ Our review of the record indicates that the taxpayers proceeded in good faith to test the jurisdiction of the commission. There were, in the trial court and here, substantial questions of law for decision. We believe that this is a proper case in which to require each party to pay its own costs.

The mandate shall so provide.