Argued September 21, affirmed November 26, petition for
rehearing denied December 21, 1971, petition for
review allowed March 31, 1972

# SCHOOL DISTRICT NO. 1, MULTNOMAH
## COUNTY ET AL, *Respondents, v.*
## NILSEN ET AL, *Appellants.*
### 490 P2d 1265

*Victor Levy,* Assistant Attorney General, Portland, argued the cause for appellants. With him on the briefs were Lee Johnson, Attorney General, Jacob B. Tanzer, then Solicitor General, John W. Osburn, Solicitor General, and Thomas N. Trotta, Assistant Attorney General and Counsel, Salem.

*Mark C. McClanahan,* Portland, argued the cause for respondents. With him on the brief were T. Leonard O'Byrne and Miller, Anderson, Nash, Yerke & Wiener, Portland.

Before LANGTRY, Presiding Judge, and FOLEY and THORNTON, Judges.

LANGTRY, J.

This is an appeal by the Commissioner of Labor from a decision of the circuit court which allowed a writ of prohibition against the Commissioner and the Attorney General of Oregon. The writ limited the scope of an administrative hearing before the Commissioner and restricted demands made in a subpoena issued for the hearing.

The factual basis of the case is relatively free of dispute. A. Ruth Spencer had been a teacher-employe of the petitioner (hereinafter referred to as District) for 23 years. In 1969 she applied for a promotion to a nonteaching position in an administrative or supervisory capacity. She was not promoted and was continued in a teaching assignment.

Mrs. Spencer then filed a complaint with the State Labor Commissioner (hereinafter referred to as Commissioner) under the provisions of ORS 659.040. The complaint followed the format of a printed form, alleging, generally, discrimination because of race and color, and specifying as supportive of the charge: Mrs. Spencer's letter requesting an administrative assignment, a letter from the personnel administrator indicating administrative vacancies, and a subsequent letter from the administrative director informing her of reassignment to a teaching position.

Thereafter, an investigation was made and upon finding substantial support of the allegations in the complaint, the Commissioner held conciliation proceedings with the District, all in accordance with ORS

659.050(1).[1] The scope of the attempted conciliation was limited to the failure to promote her to an administrative position in 1969. The matter was not resolved by conciliation, resulting in referral to the Attorney General in conformity with ORS 659.060, which provides in pertinent part:

"(1)  In case of failure to resolve a complaint after reasonable effort under ORS 659.050 a copy of the records on file in the case shall be certified by an officer of the Bureau of Labor * * *. He shall deliver such copy, together with a list of available dates for hearing, to the Attorney General * * *.

"(2)  * * * [T]he Attorney General shall prepare * * * specific charges * * * to prefer against such respondents * * *.

"* * * * * *."

The Attorney General's "charges," as amended,[2] provided:

"VI

"That based upon the records and files certified to me pursuant to ORS 659.060, and in order to bring this matter to a final administrative deter-

---

[1] ORS 659.050.

"(1) After the filing of any complaint under ORS 659.040 or 659.045, the commissioner shall cause prompt investigation to be made in connection therewith. If during the course of such investigation or upon the conclusion thereof it appears to the commissioner that additional persons should be named as respondents in the complaint the names of such persons may be added as respondents thereto. If the investigation discloses any substantial evidence supporting the allegations of the complaint the commissioner shall cause immediate steps to be taken through conference, conciliation and persuasion to effect a settlement of the complaint and eliminate the effects of the unlawful practice and to otherwise carry out the purpose of ORS 659.010 to 659.110.

"* * * * * *."

[2] The amendment made no substantive changes to the original charges.

mination after a hearing, pursuant to the complaint of A. Ruth Spencer, I make the following specific charges I intend to prefer against the within named Respondent at a hearing to be conducted in accordance with the Notice attached hereto:

"1. That since 1941 up to the filing of these charges Respondent has continuously engaged in employment practices which deny Americans of Negro ancestry, because of their ancestry, race and color, equal treatment and opportunity for employment, transfer, promotion and employment security with said School District.

"2. That Respondent's employment practice referred to herein is reflected in a procedure of recruiting, screening, assigning, transferring and promoting employees based upon racial specifications and limitations. That said procedure of dealing with employees and prospective employees according to racial specifications operates in such a manner as to result in awarding jobs with better pay, higher status, greater authority and responsibility to persons of the Caucasian race in a disproportionate number to the detriment of persons of Negro extraction.

"3. That for more than 23 years Respondent's said procedure of selecting, screening, assigning, transferring and promoting employees based on racial specifications and limitations has worked to the detriment of A. Ruth Spencer and other persons of Negro extraction by limiting their opportunity for employment with Respondent.

"4. That during the period of her employment with Respondent, A. Ruth Spencer has complained to Respondent's officers, agents and employees about Respondent's employment practices which discriminate against Negroes and that because of said complaints said A. Ruth Spencer has been blacklisted by some of Respondent's employees, officers and agents.

"5. That on or about May 17, 1969, A. Ruth

Spencer made known to Respondent her desire and availability to be considered for administrative positions with Respondent which were vacant between May 17, 1969 and May 28, 1969, for which she was qualified by experience and academic background. From May 18, 1969, up to the filing of these charges, Respondent has refused to give fair consideration to A. Ruth Spencer's application, education, background and experience for such administrative vacancies or for other administrative positions which became vacant subsequent to May 28, 1969. That said refusal was based upon the fact that:

"1. Respondent's officers, agents and employees preferred to have a person of the Caucasian race appointed to fill the vacancies for administrative positions which existed at the time A. Ruth Spencer's letter of application was received, and

"2. Respondent's officers and agents desired to prevent the appointment of a Negro who had previously complained of Respondent's racially discriminatory employment practices even to an administrative position considered appropriate for a Negro."

In three separate pleadings before the Commissioner, the District demurred to the complaint, challenged jurisdiction of the Commissioner over the District, and (in the same petition) moved to strike portions of the complaint, and moved for a more definite statement. At the same time an "Answer to Specific Charges of Discrimination" was filed. All of these matters except the answer to specific charges were set for hearing on February 5, 1970. After filing of extensive memos the Commissioner entered an order on March 2, 1970, denying the motion for a more definite statement. No disposition by the Commissioner of the District's demurrer, motion to strike, or challenge to jurisdiction appears in the record.

A time and place was set for a hearing on the specific charges, and a subpoena *duces tecum* was issued to Robert W. Blanchard and Harold Kliener (District's employes, who are Superintendent and Deputy Superintendent, respectively, of Portland Public Schools). The subpoena commanded them to appear and to:

"* * * [P]roduce and bring with you the items listed on Exhibit 'A' attached hereto and made a part hereof.

"* * * * * *

"1. All personnel files and records on all persons who were hired by Respondent for any administrative position subsequent to May 17, 1969.

"2. All personnel files and records on all persons who applied or were considered for administrative positions subsequent to May 17, 1969, and who were not hired for said positions.

"3. All personnel files and records on all persons of Negro ancestry who are presently employed in any capacity by Respondent.

"4. A list of all Federally funded programs operated by Respondent, and a copy of the guidelines covering each of such programs.

"5. A list, chart or tabulation showing each job category in Federally funded programs. Said list, chart or tabulation shall include the number of persons employed in each job category as of July 8, 1969, and the number of such persons of Negro extraction.

"6. All personnel files and records on all persons of Negro ancestry who applied or were considered for employment with Respondent and were not hired during the period of time from January, 1941 to October 1, 1969.

"7. A list, chart or tabulation showing each job category of employees of Respondent showing,

year by year, beginning January, 1941, through and including the present, all of the following:

"a. The total number of persons employed in each job category each year.

"b. The number of persons in each job category who were of Negro ancestry each year.

"c. The percentage of persons of Negro ancestry employed in each job category each year.

"d. List of all teachers employed showing the following breakdown:

"(1) total number of teachers employed as tenure teachers and the number of those teachers who are of Negro ancestry for each year.

"(2) total number of teachers employed as probationary teachers and the number of those teachers who are of Negro ancestry for each year.

"(3) total number of teachers employed as assigned substitutes and the number of those teachers who are of Negro ancestry for each year.

"(4) total number of teachers employed as temporary teachers and the number of those teachers who are of Negro ancestry for each year.

"(5) total number of teachers employed as day by day substitutes and the number of those teachers who are of Negro ancestry for each year.

"(6) total number of teachers employed who are on leave and the number of those teachers who are of Negro ancestry for each year.

"(7) total number of teachers involved in educational advancement programs but not on leave and the number of those teachers who are of Negro ancestry for each year.

"(8) total number of teachers who are

otherwise on leave and the number of those teachers who are of Negro ancestry for each year."

The hearing was continued until March 3, 1970. On this date the District filed in the Circuit Court for Multnomah County the petition for a Writ of Prohibition which forms the basis for this appeal. The Commissioner and the Attorney General answered. After hearing, the circuit court first filed an opinion, then issued the writ in which it commanded the Commissioner

"\* \* \* to desist \* \* \* from any further proceedings or hearings with respect to anything other than the decision of petitioner School District No. 1 in May and June, 1969, not to promote A. Ruth Spencer from the position of classroom teacher to an administrative position."

The writ, in effect, eliminated "charges" (1) and (2), supra at p. 400, and quashed the subpoena's demands numbered (3), (6) and (7), supra at pp. 402-403.

The principal issue is whether a Writ of Prohibition is an appropriate remedy for limiting the scope of an administrative hearing and a subpoena issued pursuant thereto.

In *Southern Pacific Co. v. Heltzel,* 201 Or 1, 11, 13, 268 P2d 605 (1954), where the writ was held available in Oregon, the court said:

" 'The object of this writ is to prevent an inferior tribunal from usurping a jurisdiction with which it is not legally vested, or, to put it in another form, it issues only to restrain the acts of an inferior tribunal exercising some judicial power which it has no legal authority to exercise at all. A writ of prohibition is an extraordinary writ issu-

ing out of a court of superior jurisdiction, and directed to an inferior court or some other inferior tribunal exercising some judicial or quasi judicial power, commanding it to cease entertaining jurisdiction of a cause or proceeding over which it has no control, or where such inferior tribunal assumes to entertain a cause over which it has jurisdiction, but goes beyond its legitimate powers and transgresses the bounds prescribed to it by law.'

"\* \* \* \* \* \*

" 'Three conditions are necessary to warrant the granting of the relief: First, that the court, officer or person against whom it is sought is about to exercise judicial or quasi-judicial power; second, that the exercise of such power is unauthorized by law; third, that it will result in injury for which no other adequate remedy exists.' "

The first condition is met in the case at bar by the pendency of the hearing before the Commissioner. The second and third form the crux of the issues before this court. In order to answer the second question, that is, whether ORS ch 659 authorizes the Commissioner and the Attorney General to proceed as they are attempting to do, a preliminary analysis of the intended function of the broad allegations of discrimination in "charges" (1) and (2), supra, becomes necessary.

The gist of Mrs. Spencer's complaint can be found in "charges" (3)-(5), supra, and summarized as follows: During her 23 years with the District Mrs. Spencer has complained of its general discriminatory employment practices; because of these complaints, adverse comments ("black marks") have been entered on her personnel record, which ultimately resulted in her being denied a promotion in May of 1969.

■ The allegations of general discriminatory em-

ployment practices, "charges" (1) and (2), are necessary, the Commissioner argues, to establish that Mrs. Spencer's past complaints to the District were in fact justified and, thus, the adverse comments noted on her record were unfounded, and unfairly prevented her from securing a promotion. If we accept this argument, the propriety of "charges" (1) and (2) (and the corresponding portions of the subpoena, (3), (6) and (7)), turns solely on the relevance of such evidence in proving that the promotion denial of 1969 constituted a discriminatory act. Since the office of the writ of prohibition, as described in *Heltzel* is to correct jurisdictional defects, use of it to determine only the relevancy of evidence would be improper.

Several factors weaken the Commissioner's argument, the first being the actual need for showing the veracity of Mrs. Spencer's previous complaints. Proof that comments or "black marks" were entered on her record at all would appear to support her complaint of discrimination, if they actually prevented her promotion in 1969.

The Commissioner declined, at the hearing in the trial court, an offer by the District to stipulate that Mrs. Spencer be paid on the basis of her qualifications for promotion subsequent to any adverse entry in her personnel file. This refusal raises some doubt as to exactly what the object of the administrative proceeding is, and, for our consideration here, what the relationship of "charges" (1) and (2) is to Mrs. Spencer's complaint. Similarly, we find the Commissioner's "class action" explanation lacking in factual support.[9] These inconsistencies lead us to conclude

---

[9] The Commissioner also attempts to support "charges" (1) and (2) by contending the Attorney General was merely comply-

that "charges" (1) and (2) constitute allegations of discrimination separate and distinct from those dealing specifically with Mrs. Spencer's promotion denial and, therefore, the issues raised by them are not confined to relevancy of evidence, but reach jurisdictional proportions. In light of this, we now consider whether the Commissioner exceeded his jurisdiction under ORS ch 659 in entertaining these charges.[4]

■■ Though not explicit on the face of ORS ch 659, the logic of the statutory scheme for redressing discriminatory acts would dictate that a "charge" filed by the Attorney General under these circumstances be limited to the allegations of the complaint. The parties agree the primary goal of Oregon's Fair Employment Practices Law (FEPL) is resolution of complaints through voluntary compliance. It would follow, then, that to allow a hearing on "charges" not within the ambit of the complaint, and, therefore, presumably not a subject of conciliation, would bypass the statutory conciliation procedures designed to bring about voluntary compliance. In accord with our construction of Oregon's Fair Employment Practices Law are federal cases construing analagous provisions of the federal Civil Rights Act, Title VII of the Civil Rights

---

ing with the legislative mandate of ORS ch 659, which is to frame charges sufficient to sustain a cease and desist order to "protect the rights of the complainant and other persons *similarly situated.*" ORS 659.010(2)(a). (Emphasis supplied.) However, "charges" (1) and (2) transcend any class of persons that might be considered as "similarly situated" to Mrs. Spencer, and encompass a class consisting of *all Blacks ever employed (or denied employment) in any capacity by the District.*

[4] The substance of the question here is to what extent the Attorney General may expand the subject matter of the complaint in drawing up the "charges" for hearing before the Commissioner.

Act, 42 USC 2000e-5-15 (1964). Facing a somewhat similar situation, the court in *King v. Georgia Power Company,* 295 F Supp 943, 947 (ND Ga 1968), stated:

"* * * It should be emphasized that the EEOC [Equal Employment Opportunity Commission, the federal counterpart of the Bureau of Labor] is not free to manipulate the scope of a case beyond the bounds herein expressed. The expansion of a particular charge is limited to the issues that a particular complainant has standing to raise * * *."

"Charges" (1) and (2) exceed the scope of Mrs. Spencer's original complaint. We find the Commissioner lacked jurisdiction to entertain these charges at the pending hearing, which satisfies the second requirement of prohibition enunciated in *Heltzel.*

Having reached this conclusion it is unnecessary to decide another issue argued by the parties, that is, whether conciliation is a jurisdictional prerequisite to a hearing on a charge. A legislative amendment in the 1971 session apparently has rendered this question moot.[5]

The District contends that the Commissioner lacks jurisdiction over the District because public em-

---

[5] ORS 659.050(1) now states:

"(1) After the filing of any complaint under ORS 659.040 or 659.045, the commissioner *may* cause prompt investigation to be made in connection therewith. If during the course of such investigation or upon the conclusion thereof it appears to the commissioner that additional persons should be named as respondents in the complaint the names of such persons may be added as respondents thereto. If the investigation discloses any substantial evidence supporting the allegations of the complaint the commissioner *may* cause immediate steps to be taken through conference, conciliation and persuasion to effect a settlement of the complaint and eliminate the effects of the unlawful practice and to otherwise carry out the purpose of ORS 659.010 to 659.110." (Emphasis supplied.)

ployers were not included within the definition of "employer," ORS 659.010, until that section was amended effective August 22, 1969, a time subsequent to Mrs. Spencer's promotion denial. The District waived this objection in the trial court and did not cross-appeal the finding that the objection was withdrawn. Therefore, the question is not before us for decision.[①]

We have concluded that two of the three requirements for exercise of the writ existed. *Southern Pacific Co. v. Heltzel,* supra. The remaining requirement is that the jurisdictional error would cause "injury for which no other adequate remedy exists." *Heltzel* and *Willamette Val. Lbr. Co. v. Tax Com.,* 226 Or 543, 359 P2d 98, 360 P2d 926 (1961), are the only Oregon decisions dealing with prohibition. In each, the irreparable harm allegedly emanated from the inability of appeal to reverse the immediate effects that an administrative order would have. No such claim can be made here. Any harm alleged by the District must be an incident of the hearing itself and compliance with the subpoena *duces tecum* issued pursuant thereto. Evidence offered in the trial court as to the detrimental effect a public hearing would have on the morale of the District's employes and students we think was properly considered in the trial court's opinion as immaterial. On the other hand, evidence produced as to the hardship that would be incident to compliance with parts (3), (6) and (7) of the subpoena suffices. Such evidence shows that compliance with

---

[①] The statutory construction argued by the District is unpersuasive. The New York courts have reached the opposite conclusion in construing an almost identical provision of the New York Fair Employment Practices Act. Mtr. of Board of Higher Educ. v. Carter, 14 NY2d 138, 250 NYS2d 33, 199 NE2d 141 (1964).

the subpoena would result in expenditures of untold thousands of dollars, impede the normal business routine of the District, and require moving virtually all of this huge school district's personnel files to the hearing.

■ As to harm engendered by compliance with the subpoena, another remedy did exist: namely, to refuse to obey the subpoena and force the Commissioner to seek judicial enforcement through contempt.[7] Little attention was given to the availability of this alternative remedy in either party's brief. However, in view of the close relationship between the jurisdictionally defective charges and the excessive demands of the subpoena, and the fact that the alternative remedy held substantially less possibility of providing a complete remedy than did the writ of prohibition, we consider the subpoena fulfilling of the "irreparable harm" requisite. All requirements for prohibition are, therefore, met.

We have quoted the substance of the writ which the trial court signed. In the opinion which preceded the writ, the trial judge said that "[t]he policy considerations of limitations must override" Mrs. Spencer's contention that her claim of discrimination is the culmination of entries made in her personnel record by school administrators for the 23 years of her employment. His opinion indicates the trial judge believed the limit of her evidence should be for two years preceding her complaint. This was not made a

---

[7] Since most administrative agencies do not possess plenary power to enforce subpoenas, enforcement must be through the courts. The usual practice is for the petitioned court to hold a show-cause hearing on whether respondent should be held in contempt. Pope & Talbot, Inc., v. State Tax Com., 216 Or 605, 621, 340 P2d 960 (1959). See Annotation, 130 ALR 327, 332 (1941).

requirement of the writ, and inasmuch as relevant evidence of Mrs. Spencer's complaint may legitimately be found in and relating to her entire personnel record, we hold the trial judge's observations on time limitations of such evidence to be inapplicable. In all other respects the order allowing the writ is affirmed.

Affirmed.

THORNTON, J., dissenting.

I am unable to agree that this is a proper case for allowing a writ of prohibition.

The majority opinion places chief reliance on *Southern Pacific Co. v. Heltzel,* 201 Or 1, 268 P2d 605 (1954). In *Heltzel* the Supreme Court carefully pointed out the general rule: A writ of prohibition lies only to restrain a clear excess of jurisdiction where there is no other adequate remedy; that it does not issue to correct or restrict errors or irregularities of a regulatory agency which is acting within its jurisdiction although proceeding improperly in the exercise of that jurisdiction.

As I read the charges involved here, I fail to see where the Attorney General is about to cause the Labor Commissioner to exceed his statutory jurisdiction. The fact that the school district may, as claimed by the Attorney General, have pursued a general policy of racial discrimination against other teachers of Negro ancestry over a long period in the past may be reasonably related to, or have some bearing on, the Attorney General's charge that Mrs. Spencer was discriminated against. *See, Dobbins v. Local 212, International Bro. of Elec. Wkrs.,* 292 F Supp 413 (SD Ohio 1968); *United States v. H. K. Porter Company,* 296 F Supp 40 (ND Ala 1968). Yet this is what the

lower court says constituted an attempt to exercise jurisdiction which the Labor Commissioner does not possess and therefore must be enjoined. This decision appears to be out of step with the tenor of recent federal court decisions cited in appellants' brief interpreting parallel federal fair employment practices statutes.

Additionally, the rule is well established that a writ of prohibition does not lie where the legal processes provide an adequate remedy. *See Willamette Val. Lbr. Co. v. Tax Com.*, 226 Or 543, 359 P2d 98, 360 P2d 926 (1961). Here the remedy is provided by ORS 659.080, which provides:

> "Any party aggrieved by an order of the commissioner issued after hearing under ORS 659.060, may appeal from such order to the circuit court in accordance with the provisions of ORS chapter 183. * * *"

This is exactly what the aggrieved party did in *Williams v. Joyce*, 4 Or App 482, 479 P2d 513, Sup Ct *review denied* (1971), another case involving the Oregon Civil Rights Law. Moreover, even if the Commissioner should decide, after a full public hearing, to issue a cease and desist order against the school district, the order is not self-enforcing. It can only be enforced by filing a court suit. ORS 659.070.

As the Supreme Court said in *Willamette Val. Lbr. Co. v. Tax Com.*, supra at 548:

> "The fact that direct access to the courts might be more speedy and less burdensome than the route provided by statute does not necessarily justify judicial intervention in the executive or legislative process when the legislature has provided an exclusive remedy which is adequate. *Powell v. State Bd. of Pilot Com'rs*, 224 Or 122, 355 P2d 224; *P. U.*

*Com. v. Portland Traction Co.*, 222 Or 614, 331 P2d 344."

As to petitioner's claim of undue breadth and lack of relevancy of the subpoena duces tecum, under the liberal rule for testing administrative agency subpoenas announced in *Pope & Talbot, Inc. v. Tax Com.*, 216 Or 605, 340 P2d 960 (1959), and approved in several recent United States Supreme Court cases cited in that opinion, I believe that the subpoena in this case meets the modern test of relevancy. In any event, as the majority opinion here properly points out, the school district has an adequate remedy at law by refusing to obey the subpoena and requiring the Commissioner to justify his position in a separate proceeding in a court of law as specifically provided in ORS 183.440.⊙ An evidentiary hearing is the proper and usual procedure to thresh out disputes as to the permissible scope of a subpoena duces tecum. ORS 183.440; *Okla. Press Pub. Co. v. Walling*, 327 US 186, 66 S Ct 494, 90 L Ed 614, 166 ALR 531 (1946). This certainly does not call for the granting of a writ of prohibition.

The school district says that to assemble the information requested by the Attorney General will

---

⊙ ORS 183.440 provides:

"Agency subpenas authorized by law shall be issued to any party to a contested case upon request and, to the extent required by agency rule, upon a statement or showing of general relevance and reasonable scope of the evidence sought. If any person fails to comply with any subpena so issued or any party or witness refuses to testify on any matters on which he may be lawfully interrogated, the judge of the circuit court of any county, on the application of the agency or of a designated representative of the agency, shall compel obedience by proceedings for contempt as in the case of disobedience of the requirements of a subpena issued from such court or a refusal to testify therein."

cause it great inconvenience, expense and irreparable harm. It is also inconvenient, expensive and harmful to be denied employment or promotion because of race or color.

We are dealing with a remedial statute designed to eliminate job discrimination "because of race, religion, color, sex or national origin * * *." This is the declared public policy of Oregon. ORS 659.020. A remedial statute is construed liberally to effectuate its purposes. *Myers/Sherwood v. Tualatin RFD,* 5 Or App 142, 483 P2d 95 (1971) (firemen's civil service act); *Boling v. Nork,* 232 Or 461, 375 P2d 548 (1962) (Workmen's Compensation Act); *Sunshine Dairy v. Peterson et al,* 183 Or 305, 193 P2d 543 (1948) (Milk Control Act); *Puget Sound B. & D. Co. v. S. U. C. C.,* 168 Or 614, 126 P2d 37 (1942) (Unemployment Compensation Act).

It is my conclusion that to allow the writ in this case is a premature and an unwarranted intervention by the judicial branch of government into the operations of a specialized administrative agency of the executive branch to which the legislature has given the sensitive and difficult task of enforcing the state's fair employment practices laws.

For these reasons I respectfully dissent.