MORDHORST, Respondent v. EGERT et al., Respondents
and
C. A. KELLEY, et al., Appellants

(223 N.W. 2d 501)

(File No. 11264. Opinion filed November 21, 1974)

Order denying petition for rehearing January 6, 1975

Bangs, McCullen, Butler, Foye & Simmons, Rapid City, Stewart, Hatfield, Klass & Whicher, Sioux City, Iowa, for plaintiff and respondent.

Davenport, Evans, Hurwitz & Smith, Sioux Falls, for defendant and respondent, R. W. Egert.

Blue & Haeder, Huron, for defendant and respondent, D. J. Bregel.

Costello, Porter, Hill, Bank & Nelson, Rapid City, for defendant and respondent, M. A. Grove.

Gunderson, Farrar, Aldrich, Warder, DeMersseman & Wilkins, Rapid City, Austin, Hinderaker & Hackett, Watertown, for defendants and appellants.

ADAMS, Circuit Judge.

This is but another round in the continuing contest that has involved numerous optometrists, the South Dakota Optometric Association, the State Board of Examiners in Optometry and at least two corporations. One of the corporations manufactures and sells optical goods and the other provides prepaid eye-care plans. Only the latter is a party in this lawsuit. Prior events are well described in Kelley v. Duling Enterprises, Inc., 84 S.D. 427, 172 N.W.2d 727, decided by this court on December 8, 1969.

Less than one year after that decision was handed down, the State Board of Examiners in Optometry received written complaints signed by the president of the South Dakota Optometric Association alleging that R. W. Egert, D. J. Bregel, M. A. Grove, and one other optometrist were guilty of unprofessional conduct. It was claimed that each of these optometrists aided and abetted Duling Optical Company in the unlawful practice of optometry. Informal hearings were held on November 30, 1970. By its Order and Notice of Hearing dated June 1, 1971, the four optometrists were advised of the charges and told that formal hearings would be held on December 6, 1971. That date came and went without the hearings being held or rescheduled.

On May 28, 1971, Charles Mordhorst, a South Dakota citizen (and an employee of Duling Optical Company), commenced this action. His pleading includes charges against Drs. Egert, Bregel and Grove that are substantially identical to those described in the Board's Order and Notice of Hearing, plus an allegation that the Board had failed to commence and properly process these and other charges. He also included as defendants the three members of the South Dakota State Board of Examiners in Optometry. An additional defendant is the corporation that offers prepaid eye care for the patients or customers of certain member optometrists, unlawful activity on its part being alleged.

Mordhorst sought to enjoin each of the nonboard member defendants from further unprofessional conduct and to enjoin the continuance of the alleged unlawful practices of the named corporation. As to the Board and its members, Mordhorst sought to enjoin further proceedings on the pending complaints against the nonboard member optometrists.

Answers, amended answers, cross-claims, motions and briefs followed. Discovery was had and hearings were held. The trial was eventually completed. By its memorandum decision, the trial court found no unprofessional conduct on the part of Drs. Egert, Bregel and Grove, and granted injunctive relief against the South Dakota State Board of Examiners in Optometry "because of a showing of a lack of a fair and impartial tribunal and violation of the South Dakota Administrative Procedures Act." The court also found capping and steering between South Dakota Visions Service Corporation and its member optometrists, and that the corporation was unlawfully practicing optometry. Neither the corporation nor Drs. Battin, Hines and Kelley have appealed.

This appeal is from that part of the trial court's judgment that enjoins the Board from further action on the still unresolved administrative proceedings against Drs. Egert, Bregel and Grove. Numerous questions have been raised by appellants but only three issues seem critical:

(1) Does Charles Mordhorst's status as an employee of Duling Optical Co. disqualify him as plaintiff and establish that this action is collusive?

(2) Should there have been an exhaustion of administrative remedies before the circuit court assumed jurisdiction?

(3) Were the procedures of the Board of Examiners sufficient when measured by due process requirements?

Each of these questions must be answered in the negative. The answers will be discussed separately and in order.

### Proper Plaintiff

This action was commenced under SDCL 36-7-28 which provides in part:

"Any person violating the provisions of this chapter may be enjoined from further violations in the circuit courts of this state in actions to be brought by the state board of examiners in optometry. Such suits may also be brought by any citizen of the state.    *    *    *"

Appellants contend that this lawsuit is the result of an "arrangement" between Duling Optical Company (the corporation that employs the plaintiff but which is not a party to this lawsuit), and Drs. Egert, Bregel, and Grove, the nonboard member defendants (respondents herein).

Factual support for this contention is not to be found in the record. Absent such proof, the court must conclude that Charles Mordhorst, a citizen of this state, does qualify as a proper plaintiff. Only upon a showing that plaintiff is using this statutory right contrary to the public interest, will courts withdraw their aid. Morton Salt Company v. G. S. Suppiger Company, 314 U.S. 488, 62 S.Ct. 402, 86 L.Ed. 363.

### Exhaustion of Remedies

Two well-established doctrines are involved at this point. One of the doctrines claims the generic title (i. e., exhaustion of remedies); the other is referred to as the doctrine of primary jurisdiction.

It is often said that where a claim or dispute is cognizable by an administrative body, judicial interference will be withheld until the administrative process has run its course. Myers v. Bethlehem Shipbuilding Corporation, 303 U.S. 41, 50, 58 S.Ct. 459, 463, 82 L.Ed. 638, 644. This statement is too broad; it is not supported by the holdings. Both the doctrine of exhaustion of remedies and the doctrine of primary jurisdiction must be considered when problems of this nature are encountered. Davis, Administrative Law Treatise, § 20.01; Jaffe, The Exhaustion Of Administrative Remedies, 12 Buffalo L.Rev. 327.

The exhaustion of remedies doctrine is primarily concerned with the timing of the judicial review of administrative action. 2 Am.Jur.2d, Administrative Law, § 595. It is to be distinguished from the doctrine of primary jurisdiction; applica-

tion of the latter doctrine determines whether the court or the agency should make the initial determination. Far East Conference v. United States, 342 U.S. 570, 72 S.Ct. 492, 96 L.Ed. 576; Davis, Administrative Law Treatise, § 19.08.

■ The doctrine of primary jurisdiction can arise only when both the court and an administrative agency have authority to pass on a question. The proper application of this doctrine should result in orderly and sensible coordination of the work of agencies and the courts. Davis, Administrative Law Treatise, § 19.01. Since both the courts and the South Dakota State Board of Examiners in Optometry have authority to pass on some of the questions raised by this lawsuit, and since this lawsuit is not an appeal from a decision or order of the South Dakota Board of Examiners in Optometry but is an original action, a primary jurisdiction question exists.

The exhaustion of remedies doctrine is raised by the fact that written complaints were filed with the South Dakota State Board of Examiners in Optometry and *ex parte* informal hearings were completed. Even though formal hearings have not been held, an order was issued calling for such proceedings. It can be argued that some significant administrative action has been taken. In addition, this plaintiff attacks the administrative procedures on the ground that the South Dakota State Board of Examiners in Optometry is unconstitutionally constituted. More specifically, it is his contention that the Board's bias and its inaction render it incompetent to act.

■ The presence of constitutional questions coupled with a sufficient showing of the inadequacy of administrative relief and impending irreparable harm flowing from delay incident to following the prescribed administrative procedures is sufficient to overcome the claim that administrative proceedings must first be exhausted. Sandia Savings and Loan Association v. Kleinheim, 74 N.M. 95, 391 P.2d 324; Wisconsin Collectors Assn. v. Thorp Finance Corp., 32 Wis.2d 36, 145 N.W.2d 33; 2 Am.Jur.2d, Administrative Law, § 602.

■ Professor Davis suggests that the applicability of the exhaustion doctrine be determined by weighing certain factors:

> "The key factors are three: extent of injury from pursuit of administrative remedy, degree of apparent clarity or doubt about administrative jurisdiction, and involvement of specialized administrative understanding in the question of jurisdiction. Unfortunately * * * each often calls for a considerable amount of judgment for its proper appraisal." Davis, Administrative Law Treatise, § 20.03.

This Davis test has been adopted and used by several courts. Lone Star Cement Corporation v. F. T. C., 1964, 9 Cir., 339 F.2d 505; Willamette Valley Lumber Co. v. Ellis, 1961, 226 Or. 543, 359 P.2d 98, 360 P.2d 926. When the facts of the instant case are measured against this test the trial court's refusal to apply the exhaustion doctrine is justified and affirmed.

■ The answer to the primary jurisdiction question is also clear. The South Dakota statute relied upon by the plaintiff gives the circuit court jurisdiction over proceedings alleging unprofessional conduct on the part of optometrists and others. Since formal administrative proceedings had not been held at the time this action was commenced, the trial court correctly concluded that primary jurisdiction vested in the court; orderly, fair and effective procedures were available and adequate to resolve all the issues. Properly conducted administrative proceedings could have handled some of the issues raised by the lawsuit but not all of them. Hence, application of the doctrine of primary jurisdiction to this factual situation fully supports the trial court's assumption of jurisdiction.

### Due Process

■ The trial court determined that Drs. Egert, Bregel and Grove were denied due process in the proceedings that are still pending before the South Dakota State Board of Examiners in Optometry; that they were entitled to injunctive relief. Some of the evidence on this point must be noted.

Dr. Corwin, the person who signed the formal complaints filed with the Board, admitted that he had no personal

knowledge with respect to the specific charges, that he made no effort to verify the contentions, and that he executed the instruments at the request of those attending a meeting of the directors of the South Dakota Optometric Association. This meeting included officers of the Association and members of the South Dakota State Board of Examiners in Optometry. It was Dr. Corwin's testimony that the guilt of the accused optometrists was agreed upon by those present before the complaints were offered for signing. It must be noted that the complaints had been prepared by the attorney who served as counsel for both the Association and the Board.

On these facts it can be concluded that the agency given authority by statute to decide the matter had done its job before the formal charges were signed or presented to it for action. Of interest is the fact that neither during the informal proceedings conducted by the Board nor during the trial of this case was any solid evidence of unprofessional conduct on the parts of Drs. Egert, Bregel and Grove produced.

Basic due process requirements were recently described by Morgan, Circuit Judge, in Wall et al. v. American Optometric Association, Inc. et al., as follows:

> "It is one of the mainstays of our system of laws that a state cannot affect a person's personal or property rights except after a hearing before a fair and impartial tribunal.  *  *  *  A fair and impartial tribunal requires at least that the trier of fact be disinterested *  *  *  and that he also be free from any form of bias or predisposition regarding the outcome of the case *  *  *. Not only must the procedures be fair, 'the very appearance of complete fairness' must also be present. *  *  *  These principles apply not only to trials, but equally, if not more so, to administrative proceedings. (citations omitted)" Wall et al. v. American Optometric Association, Inc. et al., 379 F.Supp. 175 (N.D. Ga., filed April 19, 1974).

Of special interest on this point is Gibson v. Berryhill, 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488. The parties, problems

and procedures in Gibson v. Berryhill, supra, were quite similar to those now before this court. The Alabama statutes regulating the practice of optometry were under fire. Following its established procedures, the Alabama Board acted as both prosecutor and judge in delicensing proceedings. As in our case, appointed members of that Board, because of the selection process, were almost certain to have "preconceived opinions" with regard to matters likely to come before them. It was held that actual bias need not be shown. The court was concerned with whether in the usual course of events there was an indication of possible temptation for the average man sitting as a judge to be biased for or against any party in a case presented to him. Acknowledging that the law concerning disqualification because of interest applies with equal force to both administrative and judicial adjudications, the court affirmed the lower court's disqualification of the board members. Gibson v. Berryhill, supra. The application of Gibson to the instant case would require disqualification of the members of this Board.

## Conclusion

The absence of fundamental fairness in proceedings followed by the South Dakota State Board of Examiners in Optometry spawned this litigation. The trial court was asked to examine the situation and concluded that due process requirements had been violated. We affirm and decide no more. However, this and other similarly constituted boards should re-examine their structures and procedures, remembering that the final refuge people have in all governmental procedures is that of due process, the eternal friend of justice and unrelenting foe of undue passion.

DUNN, C. J., and WINANS and DOYLE, JJ., concur.

WOLLMAN, J., concurs specially.

ADAMS, Circuit Judge, sitting for BIEGELMEIER, Retired Justice, who at the time of oral argument was a member of the court, and deemed himself disqualified.

COLER, J., not having been a member of the court at the time this case was orally argued does not participate.

WOLLMAN, Justice (concurring specially).

The trial court found that defendants Egert, Bregel and Grove had not entered into or operated under any form of plan, arrangement or understanding with Duling Optical Company and entered a judgment based upon these findings enjoining the members of the State Board of Examiners in Optometry from proceeding with any disciplinary action or proceeding against these defendants based upon acts committed prior to the date of the judgment. I would affirm the judgment on the basis upon which it was entered and would not reach the constitutional question.